An accident, with resulting injury, was experienced by plaintiff, Earl Sloan, on October 28, 1937, while discharging the duties of his employment with defendant, Cochran Franklin Company, Inc.; and for 50 weeks thereafter he received total disability compensation at the rate of $8.82 per week.
Following the cessation of those payments this suit was instituted, in the petition of which he prays for a compensation award of $15.60 per week, as for total and permanent disability, less the payments previously made.
The trial of the case resulted in a judgment in plaintiff's favor for $9.83 per week for 100 weeks, beginning November 4, 1937, less a credit of fifty weekly payments of $8.82 each.
This appeal was requested and perfected by defendant. Plaintiff has answered it asking that the weekly rate of compensation be increased to $13.76 and that he be paid during disability, but not exceeding 400 weeks.
It is not disputed that the accident produced some disability for plaintiff, and that he was working for defendant when it occurred. The appeal presents primarily the following two questions: 1. To what extent was he disabled? 2. What is the correct rate of compensation to which he is entitled?
The duties of plaintiff's employment with defendant required his cutting of timber and shaping it into stave bolts and billets. While so engaged shortly before noon on October 28, 1937, undertaking the felling of a tree, a large limb struck the lower part of his back in the region of the hips and knocked him to the ground. He arose and attempted to continue working, but sharp and enduring pains caused his quitting.
The following day defendant's woods foreman carried him to a physician. From then until January 18, 1938, he received frequent treatments, including the strapping of his back. On the last mentioned date, the attending physician discharged him as being able to do, and recommending the performing of, light work. At that time there existed a slight rigidity of the muscles on each side of the lower part of his back, the lumbar region.
After such discharge, he attempted to engage in light work on several occasions, as directed by the physician; but his efforts were without avail. Pain prevented the doing of comparatively easy tasks assigned him at defendant's mills as well as some plowing and harrowing on a farm.
Additional treatments were later given by another physician, who was regularly *Page 215 
employed by defendant, consisting principally of heat and electric applications to his back. These covered a period of about three weeks. This physician, at the conclusion of the treatments, believed that plaintiff could undertake light work, and so recommended it; however, plaintiff yet complained of pain, and some rigidity of the back muscles was still apparent.
During the trial of this action, commenced on January 31, 1939, plaintiff offered the testimony of an orthopedic specialist. This expert had made examinations of plaintiff on three different occasions, namely, in January of 1938, again about a month later, and then three or four days before the trial. In connection with the examinations, plaintiff's back was X-rayed.
It was the belief of this expert, based upon all of his observations, that plaintiff suffered disability to do ordinary manual labor, and that it would endure until he submitted to a recommended operative procedure.
His examinations, including the one made a few days before the trial, disclosed the existence of two distinct disabling conditions. One was the slipping forward of the sacrum, while the other was the presence of hypertrophic arthritis of the fifth lumbar vertebra. Also present to a considerable extent, was spasm or rigidity of the muscles. The formation of spasm, he explained, is the attempt on the part of nature to splint the injured area, or in other words, to prevent its motion. He thought that the hypertrophic arthritis was probably an occupational disease possessed by plaintiff for some time, but that the blow on the back possibly caused its aggravation and the attaining of an active stage. It was his opinion that the objective symptoms of muscle spasm, with the resulting disability, could have been caused by either a flare up of the arthritic condition or the sacrum displacement.
The medical experts offered by the defense were five in number. None was a specialist in orthopedic work, as was plaintiff's witness; but all were reputable physicians of wide experience, and some were skilled in surgery and in X-ray readings. A displacement of the sacrum was not found by any of them. They admitted, however, that the accident produced some injury, and that there existed arthritis in the lumbar region; but it was their opinion that at the time of trial no symptoms of injury were apparent that would prevent plaintiff's performing the duties of a manual laborer. If any disability existed, they said, it was due to inactivity; and this would be removed by proper exercise.
All of the lay testimony produced on the question of disability, including that given by witnesses called by defendant and in its employ, favored plaintiff's contention. It was to the effect that he undertook to work on numerous occasions, but in vain, even up until a few days before the trial.
The district judge offered the following comments in his written reasons for judgment:
"We think there was a temporary total disability as a result of the accident. For some time afterward he was unable to do any work of a reasonable character. This is amply shown by the lay evidence. However, we further conclude that, on the date of trial, he had completely recovered from the effects of the injury, and the only disability remaining was from the result of his long period of inactivity.
"It is true that plaintiff was not able to resume his former occupation when this case was tried, but how long it would be before he could do so depended entirely upon his own efforts. The doctors said he would have to gradually get himself in condition."
Then the judge referred to estimated periods of time, suggested by two of the defense experts, in which plaintiff would completely recover after proper exercise; and he concluded that the 50 additional weekly compensation payments allowed, making a total of 100, would adequately care for the recovery period.
It is likewise our conclusion that plaintiff was not able to perform ordinary manual labor at the time of trial. The evidence as a whole, both medical and lay, preponderates to this effect. But we are unable to hold that the then existing disability was due solely to his inactivity. It is possible that such was the case, but not at all certain. The evidence on this point is not conclusive.
Neither does it definitely appear that complete recovery would be effected within a certain number of months following the trial. In this connection we observe that the estimate of the defense experts are not in agreement on the duration of the suggested recovery period, and that the *Page 216 
orthopedic specialist called by plaintiff opined that the complained of condition could only be remedied by an operation.
In view of the mentioned circumstances, and of the appropriate jurisprudence of this state, plaintiff should, we think, be granted a judgment for compensation during the period of his disability, but not exceeding 400 weeks, rather than for a definite number of weeks.
Anent his wages, plaintiff received an agreed price for each cord of bolts and for each billet that he cut. He operated on a piece-work basis and was in defendant's employ from October 7, 1937, to October 28, 1937, the date of his injury. During that period he actually worked twelve and one-half days, and he earned a total of $44.17.
The compensation to which plaintiff is entitled is determined, under the provisions of the Employer's Liability Act, Act No. 20 of 1014, § 8, subsec. 3 as amended by Act No. 242 of 1928, by the wages that he received. The term "wages" is defined by that statute "to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury."
In ascertaining plaintiff's daily rate of pay, the trial judge found that there were seventeen and one-half working days in plaintiff's period of employment with defendant; and the total amount earned of $44.17 was divided by that figure, which does not represent the days actually worked, giving $2.52 per day. Then he multiplied that result by six and concluded that the average weekly earnings would be $15.12. The compensation awarded was 65% of that amount.
In our opinion the court should have used the number of days that plaintiff actually worked, or twelve and one-half, in computing the daily rate of pay, rather than use the number of possible working days. This method is approved by the jurisprudence of our state. Calhoon v. Meridian Lumber Company,180 La. 343, 156 So. 412; Sesnan v. Cotton Trade Warehouse, Inc., et al., La.App., 165 So. 23; and Pelt v. Hillyer, Deutsch, Edwards, Inc., La.App., 190 So. 151. Furthermore, it seems to have the support of logic and sound reasoning. The formula that was employed could lead to unreasonable results if applied to some factual situations. For instance, in a case in which a man's employment covered a period of a year, and where, because of illness, bad weather and other preventive conditions, he worked a total of only 20 days during that time, it would obviously be improper, in determining his daily rate of pay, to divide the total amount earned during those 20 days by the number of days in the year, less Sundays and legal holidays.
Therefore, by dividing twelve and one-half, the number of days which plaintiff actually worked, into the mentioned amount of $44.17, we find his daily rate of pay to be $3.53. Multiplying this by six, discloses a weekly earning of $21.18. The weekly compensation payments to which he is entitled is 65% of this amount, or $13.76.
Since the submission of the instant case to this court, there was filed by Julius T. Long, an attorney at law, a motion in which he asserts that he is one of the attorneys representing plaintiff, and: "That the clerk of court of Richland Parish, Louisiana, in preparing the record for appeal in this case omitted the name of Julius T. Long, as one of the attorneys of plaintiff, from the front or outside covering of the said record." The prayer of the motion is "that his name be inscribed on the records of this honorable court as one of the attorneys for the said plaintiff and appellee, and included in the opinion and judgment rendered by this court in this case as an attorney for the said plaintiff."
Mr. Long's name appears on the original petition as an attorney for plaintiff, and nowhere in the record is it stated that he has withdrawn from the controversy. Furthermore, a true copy of the motion was mailed to the other interested attorney, as shown by Mr. Long's certificate, and no objection to our allowance of his request has been offered. Consequently, the relief prayed for will be granted.
For the reasons above given, the judgment of the district court is amended to the extent of awarding compensation to plaintiff of $13.76 per week, during the period of his disability but not exceeding 400 weeks, less the 50 weekly payments previously made, and the said installments commencing November 4, 1937, and to bear five per cent per annum interest from their respective maturity dates until paid. As amended, the judgment is affirmed. All costs shall be borne by defendant. *Page 253