Plaintiff was injured while cutting logs for the Kent Piling Co., Inc., on March 28, 1941, and he brought this suit against his employer and its compensation insurance carrier, T.H. Mastin Company, for compensation for total and permanent disability for a period not exceeding 400 weeks on the basis of 65% of his weekly wage of $18. He was paid compensation in the sum of $318.50 at the rate of $6.50 per week for 49 weeks. The trial court rendered a judgment in favor of plaintiff for compensation at the rate of $8.61 per week for a period not exceeding 400 weeks, subject to a credit for the amount already paid. Defendants appealed, and plaintiff answered the appeal, asking that the judgment be amended by awarding him compensation on the basis of $11.30 per week, together with the penalty of 1 1/2 times the compensation on account of an alleged lump sum settlement of less than the weekly payments actually due, or in the alternative, that the compensation be increased to $11.30 per week without the penalty.
It is conceded that plaintiff was injured when a log fell on him, his principal injury being the fracture of the bones of his right leg just above the ankle. He was sent by his employer to the Baptist Hospital in New Orleans where he was treated by Dr. Ficklin. The broken bones were placed in position and held together by metal screws. In about two weeks the screws were removed and a lighter cast was put on his leg. His leg became infected and he returned to the Hospital in September where he was treated with drugs and an incision was made in his ankle to relieve the inflammation and, according to Dr. Ficklin, the plaintiff was discharged as able to return to work on March 23, 1942, at which time his compensation payments were discontinued.
Dr. Ficklin testified that the final treatment of plaintiff consisted of the use of heat and massage and encouragement to walk without the brace or crutches; that plaintiff was told to use his leg, but whenever he would return to the Hospital he had on his brace and was walking on crutches; that he was able to walk with a slight limp and without crutches when he was discharged in March, 1942, with an estimated permanent loss of use of his right leg of 10 per cent.
This suit was filed in September, 1942, and the defense is that plaintiff was or would have been fully recovered when he was discharged in March, 1942 (other than a slight impairment in the use of his right foot which would not affect his capacity to work), had he followed the advice of the doctor and used his leg, and, in any event, if he is now totally disabled, he is only entitled to recover for the loss of a foot, or for 125 weeks, and that his compensation payments should not exceed $5.62 per week based on his average weekly earnings as a piece worker in cutting logs at a certain amount per thousand feet or per log.
Doctor Lewis examined plaintiff on the day of the trial in December, 1942, and found that his leg was swollen from the ankle to the knee with several ulcers extending through the thickness of the skin. From the history given him by the plaintiff of the injury and subsequent infection, this doctor was of the opinion that the condition of plaintiff's leg resulted from the injury and infection and impaired circulation in the leg. At that time the doctor considered plaintiff totally disabled from doing manual labor and estimated that he would be disabled for a period of about six months.
Plaintiff's wife testified that the sores came on her husband's leg shortly after he came from the hospital and that he suffers so much pain that he cannot sleep at night; that he has walked with a stick ever since he came from the hospital and has been unable to do any kind of work; that he had no sores on his leg before the injury and has never had any sores on the uninjured leg.
Plaintiff also testified that the ulcers came on his injured leg soon after he got *Page 42 
out of the hospital and have been there ever since; that he has been unable to work since he got hurt and his leg gives him so much pain that he cannot sleep at night.
Dr. McClendon examined and took x-rays of plaintiff's leg in November, 1942, and testified that he was then totally disabled from doing any kind of manual labor and this doctor thought the total disability would continue from six to eight months, and that there would be a permanent disability of about 40 per cent because plaintiff would not be able to stand on his leg all day. The doctor attributed the ulcers on plaintiff's leg to impaired circulation which he thought resulted from the blood poisoning which set up in the leg after the injury. He stated that this impaired circulation is something like varicose veins and is very hard to cure.
From the above testimony it is clear that plaintiff was totally disabled from performing manual labor, such as cutting logs, at the time of the trial and the opinions of the two doctors that his disability would continue from six to eight months were mere estimates on their part. It is now too well settled to require citation of authority that where the employee is totally disabled at the time of the trial and there is no proof to show a definite time in which the disability will continue, the proper judgment is to award compensation for total, permanent disability for a period not exceeding 400 weeks. The employer is protected under the law as he is given the right to show any time after six months from the date of the rendition of the judgment that the disability has ceased or changed and have the payments discontinued or reduced.
While there may have been a greater improvement in plaintiff's condition had he made a better effort to use his leg as advised by the doctor, yet we cannot say that he intentionally retarded his recovery or refused to carry out the doctor's instructions. If he suffered pain in his leg as he claims, he could not be expected to use his leg if the pain was thereby increased.
Counsel for defendants contends that, if plaintiff is totally disabled, his disability results from the loss of the use of a foot and the maximum compensation for the loss of the use of a foot is for a period of 125 weeks. He cites and relies on the recent case of Pourciau v. Board of Commissioners of the Port of New Orleans, La.App., 12 So.2d 36. In that case the employee's leg was amputated and he was paid compensation for 175 weeks to cover the loss of the specific member, and after the amputation the employee returned to work and earned wages equal to those which he earned before the accident. The court held that, since the employee had not filed his suit for compensation for total and permanent disability until after the expiration of more than a year from the last payment of compensation for the specific loss, his claim was prescribed. The case was decided on the question of prescription.
In the present case, plaintiff has not lost a foot or leg. In fact, there is nothing to show that he has totally and permanently lost the use of his foot or leg. His disability affects his capacity to do the kind of work that he is fitted to do by status, training and experience, and the mere fact that this disability results from the condition of his leg or foot rather than from the impairment of some other part of his body does not make the disability a specific loss instead of an impairment of his earning capacity. This case is controlled by numerous other cases where the injury was similar, such as that of Barr v. Davis Bros. Lumber Co., 183 La. 1013, 165 So. 185 and Hibbard v. Blane et al., La.App., 183 So. 39.
There is a statement filed in the record by the defendants showing that plaintiff cut logs for the Piling Company for 34 days prior to his injury and earned during that time the sum of $75.07. While plaintiff claimed that he earned at least $3 per day, yet his evidence on that point is not very definite and is not supported by any other evidence in the record. It is clear that he was paid on the basis of the logs cut by him. Under these circumstances, his weekly earnings should be determined by the method we employed in the case of Pelt v. Hillyer, Deutsch, Edwards, Inc., La.App., 190 So. 151, and also followed by the Second Circuit in the recent case of Sloan v. Cochran Franklin Co., Inc., La.App., 7 So.2d 213, that is by dividing the total amount earned by the number of days worked which gives the daily rate of pay, and then multiply this daily rate by six, the normal work days in a week. This seems to be the method used by the trial judge. *Page 43 
There is no merit in the claim that defendants should be subjected to the penalty of one and one half times the compensation due because the weekly payments made were less than the amount due. There was no lump sum settlement made or attempted, and the only result of making payments for 49 weeks of an amount less than was due is to give the defendants credit for only the amount paid, which was done.
For the reasons assigned, it is ordered that the judgment appealed from be affirmed at the cost of defendants in both courts.