This is a compensation suit in which plaintiff claims to have suffered an accident while in the employ of defendant, W. Horace Williams Company, alleging that injuries resulting from such accident brought about total permanent disability. After trial there was judgment in favor of plaintiff and against the defendant employer company and its insurer in the amount of $20 per week, not to exceed 400 weeks, subject to credits for weekly compensation paid, and rejecting plaintiff's demands for additional medical expenses. *Page 855 
From this judgment defendants have appealed, and plaintiff has answered the appeal, praying for the amendment of the judgment to the extent of allowing an additional amount for medical expenses.
At some time in or about the month of November, 1940, plaintiff entered the employ of the W. Horace Williams Company, which was then engaged in the construction of Camp Claiborne near Alexandria, Louisiana, in the capacity of a labor foreman. His duties consisted principally of directing the efforts of a crew of common laborers, numbering some 20 or more men, which was occupied in leveling off the terrain, constructing and placing tent bottoms, etc. In the course of his duties plaintiff at times actually used a shovel in instructing members of his crew in the proper method of leveling off the ground, and not infrequently gave a hand in the performance of the operations of lifting and moving tent bottoms, driving stakes, etc. To this extent it may be said that plaintiff did perform hard manual labor, but these incidents were exceptions rather than the rule. For the most part, plaintiff's duties were directional and supervisory in nature, and in the performance of these duties hard, manual labor was not essential.
On the morning of December 16, 1940, plaintiff and his crew were moved to a new area of the camp, and, finding that the necessary tools for their laborers had not been supplied, plaintiff set off for the nearest tool house in order to procure such implements. At a point some 40 or 50 yards from his crew, while passing along a narrow board walk, made slippery with mud and tilted to the right, plaintiff fell to the ground, striking his back upon a pile of junk lumber scraps lying near the right-hand side of the walk. After rising to his feet, he proceeded on his way in search of tools, later returning to his crew and continuing to discharge his duties until about the middle of the afternoon, at which time, according to his testimony, his suffering became so intense as to necessitate leaving the job and reporting to the first-aid station.
In spite of his alleged suffering and pain plaintiff continued on the job for a week following the accident, at which time he was forced to quit his employment.
On December 31, 1940, plaintiff reported to Dr. H.H. Hardy, Jr., in accordance with instructions from his employer, the W. Horace Williams Company. At the request of the company, Dr. Hardy took plaintiff's history, made a complete examination, and procured the making of X-rays.
After a short time plaintiff felt compelled to return to his home in Beauregard Parish, lacking financial ability to continue to live in or near Alexandria where he might receive treatment from the company's physicians, and thereafter placed himself under the care of Dr. David J. Drez at De Quincy, Louisiana. Plaintiff was subjected to examinations by a number of other physicians, who testified, either on trial of the case or by deposition, on behalf of the parties to this suit.
The record contains proceedings under the jurisdiction of the Industrial Accident Board of the State of Texas, which establish the fact that in March, 1940, plaintiff effected a compromise settlement with his employer, the Pure Oil Company, whereby he received the lump sum of $1,000, in addition to compensation of $597.87 which had been theretofore paid at the rate of $19.11 per week. These proceedings include a signed and witnessed statement made by Ward Windham, in which he briefly sets up the facts of the accident and injury to the effect that on July 1, 1939, while employed by the Pure Oil Company, he received an injury to his back as the result of falling backwards 2 or 3 feet. The statement further contains the declaration that the said Windham believed that he had improved to the extent where he could return to light duty work, and that, accordingly, he had agreed to accept the compromise sum as above set forth.
According to plaintiff's testimony in this case, after receiving this settlement he returned to a farm in Beauregard Parish and engaged in farming operations on a small scale for a number of months, until he applied for and received employment from the W. Horace Williams Company in November, 1940.
In response to questions on cross-examination, plaintiff testified that he had made a compensation claim for a leg injury sometime in or about 1921 or 1922. Being probed further by diligent counsel for defendants, plaintiff admitted that he had brought an action in or about the year 1932 for total disability against the Newport Company and its insurer. We find this case to have been reported, Windham v. Newport Company et al., La.App., 143 So. 538, 539, but since it was decided adversely to the plaintiff on a question of *Page 856 
law, the facts in connection with his alleged injury are not set up, with the exception of a brief statement made in one paragraph of the court's opinion, as follows: "The testimony of the plaintiff is that, after blasting one of these stumps, a piece was left in the ground, that, while pressing against it, his hand slipped, his body fell on the piece of stump which struck him in the side, causing the injury for which he is demanding compensation."
While the rights of a claimant in any given case should not be prejudiced by reason of the fact that he has sustained the misfortune of receiving disabling injuries as the result of prior accidents, nevertheless, we are definitely of the opinion that justice between the parties requires that the circumstances and effects of such prior accidents should be closely and carefully scrutinized with reference to any bearing or effect which they may have or exert upon the cause at hand.
For this reason, we are impressed with the fact that the nature and character of the injury purported to have been sustained by plaintiff in Texas in the accident of July 1, 1939, is of an exactly similar nature and character as the injury which serves as the basis of plaintiff's claim in the instant case. Numerous examinations of plaintiff were made by Dr. W.J. Rollins of the Surgical and Medical Clinic, Houston, Texas. X-rays made in connection with these examinations were obtained and submitted to the expert medical witnesses testifying in this case. The testimony convinces us that there has been no appreciable change in the condition existing immediately subsequent to the accident of 1939 and immediately subsequent to the accident of December, 1940.
It is conclusively established by the medical testimony in this case that plaintiff suffers, and has suffered for a considerable period of time, from a malformation and diseased condition of the spinal and pelvic regions. There is a divergence of opinion among the learned members of the medical profession as to the approximate time of origin of this deformity, but not one of them questioned the existence thereof, nor, indeed, did any of them succeed in convincingly eliminating this condition and its natural consequences as being the most likely cause to which might be attributed any pain, suffering or disability to perform manual labor to which plaintiff might be subjected. The diagnosis of hypertrophic arthritis of the spine and scoliosis are established beyond question.
In our consideration of this case, we have been impressed by the careful and well-considered analysis set forth in the opinion of the learned district Judge. However, it is apparent that our brother of the district Court was overly influenced in arriving at his conclusions by his disinclination to stigmatize the plaintiff in this case as a malingerer. In our opinion, it is not necessary in finding against plaintiff to convict him of malingering. But, after careful study, we are certain that plaintiff has been guilty of exaggerating his condition, and, furthermore, that he has seized upon the opportunity afforded by the circumstance of a minor mishap to attempt to identify therewith his physical infirmities.
The essence of a determination of this case is quite obviously clearly recognized by counsel for both plaintiff and defendant and is reflected in their pleadings, as well as their arguments in brief.
Plaintiff, in paragraph 4 of his petition, alleges the accident, the injuries sustained thereby, and the conclusion that such injuries resulted in the total and permanent disability of the petitioner. In paragraph 5 of his petition, plaintiff alternatively alleges that if the injuries received, as set forth in paragraph 4, did not result in his total and permanent disability, nevertheless, said injuries aggravated a pre-existing diseased condition of petitioner's back to such an extent as to result in his total and permanent disability.
Defendants, in answer to plaintiff's petition, denied the accident, alternatively urging that any disability of plaintiff which might be established resulted from prior injuries or a diseased condition in no manner connected with or arising out of his employment by the W. Horace Williams Company.
There can be no question that the burden in this case was upon plaintiff to establish either a disability resulting from injuries sustained in the course of his employment by the defendant company, or the aggravation or acceleration of a pre-existing condition which has resulted in disability.
The facts in this case are strikingly similar to those considered by this court in the case of Majors v. Louisiana Central Oak Flooring Corporation, et al., 16 So.2d 491, 492, in which case we refused recovery. The plaintiff, Majors, on *Page 857 
September 3, 1941, sustained a fall from a tram table to the floor, about 3 feet below, and claimed disability resulting from injuries to his back received thereby. Examination of plaintiff and X-rays of his back disclosed a congenital abnormality and deformation of plaintiff's spine.
The plaintiff had sustained a back injury in an accident on March 24, 1939, at which time X-ray pictures were made and a compromise settlement effected.
In disposing of this case we said:
"The only question before this Court is one of fact, as to whether plaintiff at the time of trial was disabled, and, if so, whether the disability was caused or aggravated by the accidental injury suffered in the course of his employment.
"It is too well-established to necessitate citation of authorities that plaintiff must make out his case beyond a mere possibility or probability of a causal connection or aggravation of disabling injuries.
"In the case before us, the theory of the defense seeks to establish the fact that plaintiff suffers from a congenital abnormality. All of defendant's medical witnesses, including two distinguished specialists in roentgenology, testified that the x-rays taken in 1939 and the x-rays taken in 1942, upon comparison, exhibited the same defects, and that the latter x-rays disclosed no progression or exaggeration of the spinal formation, which would indicate the existence of any disability more pronounced than was the case in 1939."
In the case now before us for consideration, we are faced with the fact that plaintiff has failed to establish any objective symptoms of an actual injury. There has been no evidence whatsoever produced, with the exception of the testimony of plaintiff himself, that would justify us in finding that plaintiff actually sustained injuries resulting from the accident of December 16, 1940. It is true that there are objective symptoms which establish the fact that plaintiff is, or certainly may be expected to suffer serious, and, perhaps, permanent total disability, but nowhere is there any evidence which establishes the fact that such disability resulted from the accident sustained by this plaintiff while in the course of his employment by the defendant company.
Careful study and close analysis of the record in this case convinces us that we would be going far afield to hold that plaintiff's disabilities resulted from or were exaggerated or accelerated by injuries received in the accident of December 16, 1940, even conceding, arguendo, that such accident actually resulted in injury.
While it is ever the disposition of courts to accord plaintiffs in compensation claims the benefit of every reasonable doubt, it is equally true that courts must scrupulously refrain from accepting speculation and possibility as an adequate basis for recovery.
On behalf of the plaintiff, the testimony, aside from that of medical witnesses, is confined to plaintiff and three negro members of the crew of which he was foreman at the time of the alleged accident. The testimony of plaintiff and these other lay witnesses deals largely with details concerning his employment, the circumstances of the accident, and the immediate results. Granting that the occurrence of the accident has been established by this testimony, there is little left of any evidential value of a character approaching the degree of proof which the law requires in the establishment of plaintiff's case. Plaintiff's testimony as to his injuries discloses subjective symptoms, the existence of which is otherwise unsupported. The trial Court did not have the benefit of any testimony from persons who had been intimately associated with plaintiff since the time of the accident, and whose testimony might have been pertinent and persuasive from a corroborative standpoint. The record is devoid of any evidence which would disclose a marked change or exaggeration of plaintiff's condition subsequent to the accident of December 16, 1940. We have no opportunity for comparison of plaintiff's condition following the alleged accident of July 1, 1939, while in the employ of the Pure Oil Company in the State of Texas, and the accident of December 16, 1940, while in the employ of defendant, Williams Company, at Camp Claiborne, Louisiana.
It is therefore obvious that the Court must be guided, to a great degree, by the testimony of the medical experts. While, ordinarily, we would not deem it necessary to undertake a detailed discussion of the medical testimony developed on trial of this case, we feel, in this instance, in consideration of the detailed opinion rendered by the trial Judge and in deference to his reasons for judgment, it will not be amiss to analyze this testimony. *Page 858 
On trial of the case Drs. H.H. Hardy, Jr., and H.O. Barker testified as witnesses on behalf of the defendant. By deposition, plaintiff offered the testimony of Dr. Stakley Hatchette, Dr. A.E. Douglas, and Dr. R. Gordon Holcombe. It is shown that plaintiff summoned Dr. David J. Drez of De Quincy, but this witness did not appear at the trial, and although it was stipulated that his testimony might be taken by deposition, this was not done.
In addition to the testimony of the doctors on trial of the case, above noted, depositions of Dr. Guy A. Caldwell of New Orleans, and Dr. W.J. Rollins of Houston, Texas, were introduced on behalf of defendants. Notwithstanding the failure of Dr. Drez to testify either in person or by deposition, the record does contain a certificate dated "3-3-41", signed by Dr. Drez, stating that "Ward Windham is suffering from bilateral sacro-iliac strain". In view of the fact that there was no opportunity for elaboration or explanation of this certificate, and, in further consideration of the failure of the physician making the certificate to appear as a witness, and the failure of plaintiff to take the deposition of said physician, we are disinclined to attach any probative value to the ex parte certificate itself.
This then leaves for consideration the testimony of three medical experts who appeared on behalf of plaintiff, and four experts who testified as witnesses on behalf of defendants.
We do not find it necessary, for the purpose of this opinion, to set forth at any great length the testimony of these distinguished representatives of the medical profession, and, accordingly, we confine our observations to those portions of the testimony of each, which, in relation with the facts of this case, we consider most important.
As to the testimony in plaintiff's behalf, we find that Dr. Hatchette, a specialist in radiology, testified as to the pathology of plaintiff's back as disclosed by the X-ray films which he made. Dr. Hatchette's findings are in accord with the findings and observations of Dr. Guy A. Caldwell, who also made, examined and reported on X-rays of plaintiff's back made in July, 1941, and the findings of Dr. W.J. Rollins, who had examined and rendered an opinion on X-ray films of plaintiff's back which had been made in July, September and December of 1939, and February, 1940.
At this point, we observe that there is no substantial difference of opinion between the seven medical experts as to the condition of plaintiff's back. It is incontrovertibly established that there has been no noticeable change, in so far as the X-rays disclose, in the condition which existed in 1939 and the condition which was reflected after December 16, 1940. It is further worthy of comment to note that not one single medical expert testified as to the finding of any objective symptoms of injury resulting from the accident of December 16, 1940.
While we feel that these observations in themselves are sufficient to justify the conclusion which we have reached, beyond any question, nevertheless, for the reasons set forth above, we proceed with a further discussion of the testimony.
It is true that Dr. Douglas testified that an injury which occurred on December 16, 1940, could have affected plaintiff's condition at the time of his examination. But, it must be emphasized that the doctor's answer to the hypothetical question propounded to him was couched in language which merely connoted the existence of a possibility, "Yes, it could."
Dr. Douglas further testified that plaintiff had not told him anything about the accident of July, 1939; that he did not remember having seen plaintiff between March of 1940 and December of 1940, and, categorically, that he found no objective evidence of a recent injury at the time of his examination.
Dr. Hatchette testified that he did not take a history of any accident, and further testified: "I believe the entire condition is old, although I cannot estimate at what time it must have begun."
And again: "Yes, I would say it (plaintiff's condition) had been present for some years before I examined him."
The testimony of Dr. Holcombe clearly indicates that he is inclined to accept plaintiff's statements of his symptoms as controlling, but it also clearly indicates that this witness did not find objective symptoms upon which he could base a definite opinion. In answer to a long hypothetical question as to whether the injury suffered on December 16, 1940, could have been aggravated to the extent that plaintiff was not able to return to work, the doctor replied: "All insurance companies know they are taking a risk when *Page 859 
they accept a man with chronic hyperthropic."
Aside from plaintiff, Dr. Douglas was the only witness to testify with reference to plaintiff's loss of weight, a condition which is emphasized in brief of plaintiff's counsel. The testimony of Dr. Douglas on this point was limited to his statement that plaintiff had lost quite a bit of weight, at least 40 or 50 pounds. The value of this particular testimony is minimized to such degree as to become negligible by the fact that no attempt was made to ascribe this loss of weight to the effects of the alleged injury, or an aggravation of the pre-existing condition.
We have been impressed in our examination of the record in this case with the fairness of the medical witnesses for both plaintiff and defendant, and by the conservative manner in which they have expressed their opinions in accordance with their findings upon scientific examination.
Considering only the testimony of plaintiff's medical witnesses, without regard to the testimony of defendants' medical experts, we are convinced that plaintiff has failed to prove his case to the degree required by law. None of plaintiff's witnesses can fix, nor do they attempt to fix with any certainty, a causal connection between injuries alleged to have been received on December 16, 1940, and plaintiff's condition at the time of their respective examinations. Not one of them testified to any objective symptoms of injury, and not one of them testified with any certainty or conclusiveness to an exaggeration of an existing condition attributable to the effects of injuries received on December 16, 1940. Summing up the testimony of these learned gentlemen, and giving plaintiff the benefit of every question on the matter, we find nothing which would carry us beyond a recognition of the existence of a mere possibility in his favor. As we have said many times before, while the protection of our compensation statute is intended to be liberally accorded to employees, the law still requires a plaintiff to make out his case with certainty, not merely by speculation.
Proceeding to an examination of the testimony of defendants' medical witnesses, we find that Drs. Caldwell, Hardy and Barker are all in accord, though their examinations were made at different times and different places. These gentlemen agreed that the conditions existing were of long standing, that they found no objective evidence of injury, and that they found no change in plaintiff's condition which would indicate an exaggeration or acceleration of his infirmities.
Added to the testimony of these gentlemen, we have the enlightening testimony contained in the deposition of Dr. Rollins of Houston, the only one of the medical experts who had made a complete examination of plaintiff between July 1, 1939, and December 16, 1940. The testimony of Dr. Rollins, taken in connection with the findings and examinations of witnesses for both plaintiff and defendant, is convincing on the point that the condition of plaintiff, as it existed between July, 1939, and February, 1940, was exactly the condition existing subsequent to December 16, 1940.
The case of Buxton v. W. Horace Williams Co., 203 La. 261,13 So.2d 855, cited by the district Judge in his opinion, is readily distinguishable from the case before us. The preponderance of the testimony in the Buxton case established the fact that all other causes or diseases which might have been responsible for plaintiff's existing condition, save injury, had been eliminated. Quite the contrary is true in this case, since testimony to the effect that there was no causal connection established as between the injury of December 16, 1940, and plaintiff's existing condition, overwhelmingly preponderates.
In the Buxton case the decision turned upon whether the aggravation of the plaintiff's condition, directly chargeable to the injury, was the proximate cause of his incapacity to work. This proposition is also true of numerous other cases cited in brief of plaintiff's able counsel. Since, in our opinion, plaintiff has utterly failed to establish any causal connection between the injury and the alleged disability, either directly or through application of the principle of exaggeration or acceleration, the authority of the Buxton case and others in line therewith is not applicable.
Since the issues in this case have been conclusively disposed of without any consideration of the question of malingering, we do not deem it necessary to discuss the authorities which have been cited to this Court on that point.
For the reasons assigned, the judgment of the lower Court in favor of plaintiff is annulled, reversed and set aside, and it is now ordered, adjudged and decreed that there be judgment herein in favor of defendants rejecting plaintiff's demands, at the cost of plaintiff-appellee. *Page 860