Plaintiff sued his employer, Glassell-Taylor Company, a commercial copartnership, and its insurer, Saint Paul-Mercury Indemnity Company of St. Paul, Minnesota, to recover workmen's compensation at the rate of $20 per week for 400 weeks and for medical expenses in the sum of $250. He alleges that on October 24, 1942, while driving a large truck of his employer, on the highway near the village of Montgomery, in Grant Parish, Louisiana, it was violently struck on its front end by another motor vehicle; that the impact caused the truck to veer to its left, leave the highway and turn over in a ditch; that he was pinned down in the truck's cab and therefrom ribs of his left side were crushed, his lungs injured to such extent that he can no longer breathe without pain; that he constantly hemorrhages from the left bronchus and lung; that said injuries and ailments produced total permanent disability to perform work of a reasonable character.
Defendants deny that in the accident plaintiff suffered serious injuries but admit that he did sustain minor ones. They aver that on January 14, 1943, he had fully recovered from such injuries as he did receive, and was able on that date to perform the duties of his regular employment.
Defendants' answer, augmented by admissions in the record, narrows the questions in contest to these:
After January 14, 1943, was plaintiff disabled to perform work of a reasonable character, and, if so, what is the probable duration of same? All other issues have been eliminated.
Judgment for compensation was awarded to plaintiff as by him prayed for, less payments thereof amounting to $208.57, and for $125 medical expenses. After unsuccessful effort for rehearing, defendants appealed to this court.
Recognizing that plaintiff was totally disabled from the effects of the accident, defendants paid him compensation on that basis to January 14, 1943, at which time the insurer's physician who had been treating plaintiff, advised that he was able to resume work.
The record leaves no doubt that plaintiff sustained serious injury in the accident alleged upon. He was driving his employer's five ton truck. It veered from the highway when struck by another motor vehicle and turned over on its left side. Its cab door flew open and plaintiff's body was violently hurled through the opening but not completely without. He was pinned down by some part of the cab that pressed heavily across his chest, with head down and feet up. He was so securely fastened the strength of three grown men was required to extricate him from this perilous situation. They hurriedly pulled him out by the feet. Plaintiff testified, and he is not contradicted, that practically all of his clothes were torn off and "when I came out I was bleeding at the mouth; I was bleeding all over."
Plaintiff reached his home in Shreveport, some 90 miles distant, the following day and on the next day, at the suggestion of the insurer's agent, he consulted Dr. H.W. Paul. Dr. Paul diagnosed his injury as being a possible fracture of the left eleventh rib or separation of cartilage thereabout. He "strapped up" plaintiff in order to immobilize the affected part. Not seeing the need of an X-ray of the locus of which complained, Dr. Paul did not have any pictures of it made. He testified that had pictures confirmed his diagnosis, the treatment would not have been changed. At that time plaintiff experienced pain when he took a deep breath. Dr. Paul continued to treat him until January 14, 1943, on which date, as above stated, the patient was discharged as being able to resume work.
Plaintiff consulted Dr. Stamper on January 16th. X-ray pictures made by this physician, in his opinion, revealed fracture *Page 592 
of the left eleventh rib. As Dr. Stamper does not specialize in diseases or injuries affecting the chest, he suggested to plaintiff that he consult Dr. P.R. Gilmer, a lung specialist in the City of Shreveport. He did not do this promptly. Thereafter, in April, plaintiff had a hemorrhage from some part or his chest, that alarmed him greatly. On the 15th of that month he did consult Dr. Gilmer. X-ray pictures of the chest then made did not reveal any lung pathology. Plaintiff then complained of pain in his left side. Dr. Gilmer, in the hope of determining the source of the hemorrhage, advised that a bronchoscopic examination be made. This is done by inserting a metal tube with light attached to one end of it, down into the trachea. This revealed an inflamed and "almost ulcerated area" from which the doctor thought the blood had come. This examination was repeated on May 4th. It revealed that the local condition, above mentioned, had definitely improved.
At defendants' instance, plaintiff was examined by Dr. M.S. LeDoux on April 26th and on November 5th. He desired that X-ray pictures of the chest be made. These were made by Dr. C.P. Rutledge on said dates. Both doctors were of the opinion that the pictures revealed no lung injuries.
Dr. E.C. Edwards, who specializes in diseases of the lungs, also at defendants' request, examined plaintiff on November 23, 1943. At that time plaintiff complained of weakness, pain of the chest and blood spitting. Dr. Edwards X-rayed the chest and made fluoroscopic examinations. These revealed no active lung pathology. He testified that plaintiff coughed quite a bit while at his office. He also testified that inflammation of the pleura could cause pain. He says that this is the only part of the lung that is sensitive to pain. He could not account for the hemorrhages.
The testimony of the physicians on the whole, to our way of thinking, is about as nearly unbiased and free from partisan coloring as any the author of this opinion has considered in cases of this character. A majority of them could find no clinical reason for the disability, pain, discomfort, etc., of which complained by plaintiff. The doctors who lastly X-rayed plaintiff could not detect fracture of the left eleventh rib as was done by Dr. Stamper. This is easily accounted for. Ample time had passed for healing to take place.
We are convinced from the testimony as a whole that the lung proper was not injured in the accident beyond, possibly, being mashed to some extent but it is highly probable the pleura, the outside protecting covering of the lung, was injured by the same crushing blow that fractured the rib. X-ray pictures will not reveal injury to the pleura. It is not improbable that there is a fusion of the pleura and the lining of the chest cavity. Be this as it may, if plaintiff is disabled from the effects of the accident, proof of that fact is sufficient to warrant an award to him. It is not necessary, after proving disability, that he prove also the specific injury or injuries or the exact organ or organs involved in order to be entitled to compensation.
Plaintiff has not worked at all since the accident. At that time he was fifty-six years of age. Immediately following the accident he began to lose weight which finally reached twenty-five or thirty pounds. He had for twenty years rendered satisfactory service to his said employer, and enjoyed good health to that time. He now suffers incessantly from insomnia and at night while trying to sleep alternates from a rocking chair to bed. He testified:
"Q. When you take a deep breath, how does it affect you? A. It is almost like a knife going through you; it just chops you down. You breathe down it feels to me like about this point (indicating) and that's as far as you go. I don't breathe like I did. I haven't got the breath or the wind or anything else. I don't even talk like I did."
He also testified that he attempted to produce a Victory garden but due to pain and discomfort afflicting him, he was forced to abandon it. When asked if he had free movement of his body, he answered: "A. No sir; the Doctors told me to get out and try to take exercise, and I have done it dozens of times and every time I would do it, it would put me right back in bed again."
The lay testimony, including that of plaintiff's wife, strongly corroborates his own testimony as regards loss of weight, pain, discomfort and insomnia.
Plaintiff breathes with difficulty. The left lung does not dilate in the process of respiration as much as the right one. Prior to the accident none of these physical limitations were present. *Page 593 
A study of this record convinces us, as it did the learned trial judge, that plaintiff is now and has been since the accident, totally disabled to work. His present physical condition is traceable solely to the effects of the accident.
In passing, it is apropos to say, as this court has said in cases of like character heretofore, in view of the fact that plaintiff was earning between $200 and $300 per month when injured, and was then in sound physical condition, we are loath to believe that he would feign disability in order to receive $20 per week for an indefinite length of time.
There is no way possible to determine when, if ever, plaintiff's disability will cease. Payments of compensation awarded by the lower court are to run during disability not exceeding 400 weeks. This is a correct condition to the judgment in his favor.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.