70 So.2d 763 (1954)
DIXON
v.
T. J. MOSS TIE CO. et al.
No. 20132.
Court of Appeal of Louisiana, Orleans.
March 8, 1954.
Lawes, Hickman and Brame, New Orleans, for defendants-appellants.
J. S. Pickett, Many, for plaintiff-appellee.
McBRIDE, Judge.
This appeal presents a workmen's compensation suit in which plaintiff alleges that while in the employ of T. J. Moss Tie Company he sustained injuries which had the effect of totally and permanently disabling him from doing work of any reasonable character. The defendants are the said employer and its workmen's compensation liability insurer. After a trial in the lower court, plaintiff recovered a judgment against both defendants in solido, for compensation at the rate of $30 per week continuing for and during the period of disability, however, not to exceed 400 weeks. Defendants have appealed.
After the appeal had been taken but before the transcript was lodged in this court, the attorneys for the respective parties presented a joint motion to us in which it was suggested that a compromise had been agreed upon, and we thereupon ordered the matter remanded to the district court for the purpose of effectuating the voluntary settlement. However, for some reason not shown by the record, the trial judge refused to give *764 approval to the proposed compromise, and we then reinstated the appeal.
Some months afterward, counsel filed a stipulation in which they set forth that the parties "concede" that the liability of defendants is for compensation at the rate of $30 per week for 200 weeks, and we were requested to amend the judgment so as to reduce the period during which compensation would be paid to 200 weeks. We were unable to construe the stipulation other than as another attempt to compromise the case, and we declined to enter the consent decree sought by the parties. Voluntary settlements or compromises of compensation claims are sanctioned by LSA-R.S. 23:1271, but the following section, 1272, makes it clear that such settlements must be approved by the district court. Our conclusion was that an appellate court has no jurisdiction to approve and enter a judgment of compromise in a workmen's suit for compensation.
The case is now submitted to us on the briefs filed by counsel.
Plaintiff for several months prior to the accident had been in the employ of T. J. Moss Tie Company in Sabine Parish, Louisiana, as a loader of crossties. He was sent by his employer to load ties in Houston, Texas. On July 2, 1951, while performing services arising out of and incidental to his employment, he met with an accident and sustained injuries.
There is no question that plaintiff met with an accident on the said date. He was one of a crew of seven men employed to load hewed oak crossties weighing as much as 400 pounds each into a railroad car. Two members of the crew, one at each end of a crosstie, would place a tie onto Dixon's shoulder and he would carry it into the car. While standing atop a stack of ties, Dixon's foot turned causing him to lose balance; the tie on his shoulder jerked him backwards. Dixon immediately complained of pain in his back; however, he carried the tie to the car and attempted to continue on with the work, but upon experiencing stiffness and soreness, he finally had to leave the job.
The defense is that plaintiff is not now disabled from carrying on his regular employment, and, alternatively, if plaintiff is disabled, such disability results from no injury sustained while in the employ of T. J. Moss Tie Company on July 2, 1951, but from prior injuries, and, in the further alternative, if plaintiff did suffer an injury while working for T. J. Moss Tie Company, he is neither totally nor permanently disabled.
The accident was reported to the loading foreman who took Dixon to a clinic operated by Dr. Herbert G. Cull in Houston; Dr. Cull was absent at the time, and one of his associates, Dr. J. F. Cox, a general practitioner, made a preliminary examination of plaintiff.
Dr. Cox, who appeared as a witness for defendants, saw Dixon late in the afternoon on the day of the accident. Dixon had some pain in the lower back which Dr. Cox characterized as being of a sciatica type; the doctor thought the injury was a minor strain and prescribed heat and mild narcotic tablets and instructed Dixon to return to see Dr. Cull the following day.
Dr. Cull, a general practitioner, also a defense witness, saw Dixon on July 3 and 4 and found a minor muscle spasm on the right side of Dixon's lower back, accompanied by tenderness along the course of the sciatic nerve running down the middle of the right leg. Dr. Cull's interpretation of the X-rays was that there was no abnormal condition, and his impression was that Dixon had either aggravated an old back injury or an arthritic condition. However, Dr. Cull suggested that Dixon call to see Dr. Bloom, an orthopedist; in the meantime, Dixon decided to return to Louisiana and never called upon Dr. Bloom. Dr. Cull's prognosis was that Dixon should have been able to return to his work in from three to six weeks.
After reaching his home at Many, Louisiana, Dixon of his own accord went to see Dr. L. H. Murdock, a general practitioner, who is employed by the T. J. Moss Tie Company. This doctor examined Dixon on *765 July 5 and treated him as a private patient until September 14, 1951, at which time he discharged Dixon as being fully able to return to work. Dr. Murdock's opinion, after his first examination of the patient, was that Dixon suffered discomfort in the lumbar sacral region, and there was manifest tenderness in the right sacro-iliac spinal muscle group. Dr. Murdock believed that Dixon had a lumbosacral strain; however, when the patient did not respond to heat therapy, Dr. Murdock sent him to Dr. Ford J. MacPherson, an orthopedic surgeon in Shreveport. Dr. Murdock thought that Dixon should have recovered in from five to eight weeks from the time Dr. MacPherson saw him.
After examining him on July 27, 1951, Dr. MacPherson's diagnosis was that Dixon suffered from a mild lumbosacral and fascial strain with nothing to suggest a ruptured intervertebral disc. The X-rays, according to Dr. MacPherson, presented a normal picture of a man of Dixon's age, and the doctor believed that Dixon's complaint would normally disappear within a period of from thirty to ninety days.
Dr. O. L. Sanders, a general practitioner, of Converse, Louisiana, next saw the plaintiff on November 13, 1951. Dr. Sanders, as a witness for plaintiff, stated that he found involuntary spasms in the lumbar muscles, chiefly in the right side, with tenderness in the lower back in the regions of the fifth lumbar vertebrae and the right sacro-iliac joint along the hip over the right side at the site of the sciatic nerve. Dr. Sanders believed that Dixon should have been able to return to his job in from three to six months from the date of the examination.
Dixon then called upon Dr. John B. Sutton of Shreveport, a neurological surgeon, on April 21, 1952. Dr. Sutton, who appeared as a witness for plaintiff, found apparent tenderness even to light pressure over the lumbosacral joint, with more marked tenderness a short distance to the right of it; there was also some degree of paraspinal muscle spasm. Dr. Sutton suspected that Dixon's trouble was a herniated disc but he would not say that such a condition existed. However, Dr. Sutton believed when he saw Dixon that he was not in any condition to do heavy work.
Dr. Ben L. Schoolfield of Dallas, Texas, who was specialized in orthopedic surgery since 1921, examined Dixon on June 30, 1952. Dr. Schoolfield, a plaintiff witness, testified that his findings were based on objective symptoms. His diagnosis was that Dixon had a ruptured intervertebral disc and characterized the patient as being totally incapacitated from doing work as a laboring man, and that he would "so continue for a long time in the future."
The last physician to see Dixon was Dr. Joseph M. Edelman of New Orleans, who has specialized in neurosurgery for approximately one year. Dr. Edelman's examination, made July 8, 1952, disclosed nothing abnormal in the patient's anatomy. His opinion was that Dixon was non-cooperative, and his testimony imports that Dixon's complaints are not genuine; he believed the patient was fully able to carry on his usual occupation.
Of course, as every court knows, disagreements among medical experts in cases of this character are not at all uncommon, as regrettable and unfortunate as that may be. It does seem that with the aid of modern technique and procedure essential to expertness in the medical science, a physician of experience should be able to ascertain within some reasonable degree of certainty, after making an examination, whether a workman, who sustains physical injury of which there are external manifestations, is capable of returning to his employment. There is one detail present in the medical testimony which we frankly do not comprehend and upon which we are constrained to specially comment. Dr. MacPherson, the orthopedic surgeon who testified for defendants, stated that while Dixon's leg lengths were equal, the right thigh was a quarter of an inch smaller than the left and the right calf was threequarters of an inch smaller than the other. *766 Dr. Sutton in his examination on April 21, 1952, also noted the discrepancies in calf measurements, as did Dr. Schoolfield, who saw Dixon on June 30, 1952. Drs. Sutton and Schoolfield attributed the condition to atrophy. Notwithstanding the findings of the three physicians as to the condition above alluded to, Dr. Edelman, who saw Dixon just eight days after Dr. Schoolfield had made his examination, testified:
"The straight leg raising tests were done and found to be normal in both lower extremities. There was no loss of muscle tone or contour and there was no evidence of muscle atrophy by measurement in either calf or thigh of either lower extremity."
It has been abundantly proven that Dixon met with an accident on the date alleged, and that he sustained a bona fide injury. After a painstaking study and analysis of all the medical testimony, we can leave the record only under the belief that Dixon, a colored man 49 years of age, is disabled and cannot return to the employment in which he was engaged at the time of the accident or perform work of any reasonable or similar character.
The findings of Drs. Cull, Cox, Murdock, MacPherson, Sanders, Sutton, and Schoolfield are that Dixon had been injured and the only disagreement among them is how long the disability should continue. The only physician who found Dixon to be in a normal physical state was Dr. Edelman.
Besides the evidence of the seven doctors who testified that Dixon had been injured, we have the testimony of plaintiff himself and several other lay witnesses to the effect that Dixon has not worked at all since the date of the accident, that he walks with a pronounced limp, and complains of continual pain.
Whether plaintiff be suffering from a lumbosacral sprain or from a ruptured or herniated disc, he nonetheless is disabled. In order to entitle an injured workman to compensation he need not prove specifically what bones, organs, etc., were injured to produce the disability. It is sufficient if he successfully proves that the effect of the accident produced such disability. Christy v. Brown Paper Mill Co., La.App., 27 So. 2d 917; Clifton v. Glassell-Taylor Co., La. App., 19 So.2d 590.
The real defense is that whatever disability Dixon may labor under arose not from the accident of July 2, 1951, but from one of his previous accidents. The record shows that on five other occasions Dixon collected from his employers by way of compromise settlements compensation for injuries sustained in accidents occurring during the course of his employment. He broke his right leg on April 27, 1943, while loading ties for T. J. Moss Tie Company, one of the present defendants. He settled this claim for $600. Dixon met with an accident while loading ties for Gross & Janes on June 9, 1947. He injured his back and right foot and collected compensation totaling $819. He compromised his claim of $1000. As a day laborer for Mansfield Hardwood Lumber Company on November 10, 1949, Dixon fell and injured his back, which occasioned temporary disability. He was paid compensation amounting to $208.93 and compromised his claim for future compensation for $250. On November 8, 1950, while working for Gross & Janes carrying ties, Dixon sustained injuries to the upper half of his left leg. He received $330 in compensation and $150 in compromise settlement. During May 1949 he received from the same employer $300 in compromise for a sprained ankle sustained while carrying ties to a railroad car.
In Windham v. W. Horace Williams Co., 18 So.2d 854, the Court of Appeal for the Second Circuit said:
"While the rights of a claimant in any given case should not be prejudiced by reason of the fact that he has sustained the misfortune of receiving disabling injuries as the result of prior accidents, nevertheless, we are definitely of the opinion that justice between the parties requires that the circumstances and effects of such prior accidents *767 should be closely and carefully scrutinized with reference to any bearing or effect which they may have or exert upon the cause at hand."
There is nothing in the evidence which could lead us to the belief that plaintiff's present complaints emanate from any of the five previous accidents. The record reflects that Dixon had been doing the hard manual labor of carrying 400-pound crossties on his shoulder for a period of four months preceding his latest accident as the employee of T. J. Moss Tie Company. It would be difficult, indeed, to conclude that if Dixon had a pre-existing residual injury in his back he could have undergone the strenuous duties his occupation entailed without complaint of pain or some manifestation of incompetency during the four-month period. It is also certain that if Dixon had not been able to properly do the work during the four-month period, he would not have been retained as an employee by the T. J. Moss Tie Company at a rate of pay of about $80 per week. Several employees of said defendant testified that Dixon was a "good hand" and that his work at all times was entirely satisfactory.
At the moment Dixon is totally and permanently disabled, and the court has not the right to prophesy and fix a time when the disability might cease. Where a worker is totally disabled at the time of the trial and there is no proof to show a definite time in which the disability will terminate, the proper judgment is to award compensation for total permanent disability for a period not exceeding 400 weeks. LSA-R.S. 23:1221(2); Cummings v. T. H. Mastin & Co., La.App., 17 So.2d 40.
If at any time after six months from the rendition of the judgment the incapacity of Dixon diminishes, the defendants have the legal right to apply for a modification of the judgment under LSA-R.S. 23:1331.
The judgment appealed from will be affirmed.
Affirmed.