CHARLES E. SANDALL, APPELLEE, V. MORITZ N. OTTO ET AL.,
APPELLANTS.

FILED SEPTEMBER 22, 1916.  No. 18976.

1. **Evidence:** HYPOTHETICAL QUESTIONS. In propounding a hypotheti-
cal question, a party may assume the existence of facts in accord-
ance with his theory, if there is evidence in the record to sustain
it, notwithstanding there may be a conflict of evidence on the point
raised.

2. **Appeal:** ESTOPPEL. A party cannot complain of a hypothetical
question asked witnesses of the adverse party where the questions
asked his own witnesses were of the same nature and assumed
substantially the same state of facts.

APPEAL from the district court for York county: ED-
WARD E. GOOD, JUDGE. *Affirmed.*

*Burkett, Wilson & Brown,* for appellants.

*B. F. Good, contra.*

MORRISSEY, C. J.

This is an appeal from a judgment of the district court
for York county, wherein plaintiff was awarded a judg-
ment for $9,565 for services rendered as an attorney.
The defendants are the sons of one William Otto, who
was the owner of property worth approximately $600,000,
and consisting principally of farm lands. May 17, 1911,
William Otto, the father, conveyed all of his property
to these defendants to the exclusion of his other three
children, namely, Waldo L. Otto, Minnie E. Wiseman,
and Emma Faustman. The daughters, Mrs. Wiseman
and Mrs. Faustman, upon learning of these conveyances,
instituted proceedings in the district court for York
county, acting as next friend for their father, praying to
have the conveyances set aside because of the alleged
mental incapacity of their father, and alleging that these
defendants had exercised undue influence over the father

and that the conveyances of the property, both real and personal, were obtained by fraud and intimidation. There was also a prayer for an accounting of the rents and profits of the property for seven years immediately preceding. The petition set out in detail the age and mental condition of the old gentleman and the relationship of all the parties to the suit.

There is a dispute as to the exact date when the plaintiff in this case was consulted or employed by the defendants herein, who were also the defendants in that action, but the exact date of his employment is not very material. Certain it is that he was employed sometime in the month of October, 1913, and, although he had the assistance of other counsel who were also employed by the defendants, yet he did the major portion of the work of preparing the case for trial and in bringing about the final settlement. The real question which was there presented was the competency of the old gentleman, William Otto, to make the conveyances which were attacked. If he were competent to make the conveyances, it follows that the entire $600,000 worth of property which he possessed had been transferred to these two sons. If, on the other hand, he was incompetent to make a valid conveyance, and the conveyances were set aside, these defendants would become divested of the title to this large amount of property, but as the heirs of William Otto, provided he remained incompetent to transact business until his decease, they would inherit two-fifths of the property. The brother Waldo L. Otto was not a party to that litigation. That suit was filed October 4, 1913. Plaintiff claims to have been employed by the defendants to conduct the defense thereof on the 7th of October following, while the defendants contend that his employment did not begin until the latter part of that month, and allege that immediately following the filing of the suit they employed an attorney of Omaha, who drew the first answer. That the Omaha attorney did draw the first answer prepared in the case is undisputed, but the case

did not go to trial on this answer, but on an answer prepared and filed by this plaintiff. Subsequently another attorney was called in who assisted plaintiff in the trial and management of the case and was paid for his service by the defendants.

Appellants well say that the issues presented in this action are: (a) The time that the plaintiff's retainer took place; (b) the amount and the nature of the services which he performed; (c) the value of such services. The first two are material only in so far as they throw light upon the third. After studying the evidence, we cannot see that it matters very much whether plaintiff was employed on the 7th of October, as he alleges, or sometime thereafter, as contended for by defendants. Certain it is that one of the defendants discussed the case with him about the date he alleges he was employed. He was then transacting other business for the defendants, and when they discussed this suit with him it is fair to presume that they meant to retain him, and that he thereafter understood that he was retained. Surely he would not have felt free to have accepted a retainer from the other side of the controversy, and we think the subsequent conduct of all the parties leads irresistibly to the conclusion that from the date of his first consultation with one of the defendants he considered himself employed, and defendants well knew that he so understood their conversation.

It is alleged that following this employment he devoted the major portion of his time to the preparation and trial of the case until its settlement the following February. This claim was disputed before the jury, but we think it is fairly sustained by the evidence, although we cannot see that a few days more or less spent in interviewing witnesses and preparing for trial can be said to make any material difference. In the preparation of a case for trial a lawyer must be given more or less latitude, and be left free to determine the steps to be taken in order to fully protect his client's interests

and prepare the case.    The relation of attorney and
client contemplates this very thing.    When a litigant
employs an attorney he cannot determine with any de-
gree of certainty how much time it may be necessary for
the attorney to expend in the preparation of his case, but
he has a right to expect that the attorney will spend such
time as may be necessary to protect his client's inter-
ests.    A failure to do this may be regarded as a breach
of good faith on the part of the attorney, but, like the
client, the attorney cannot always tell in advance what
work may be necessary to do or how much time it may be
necessary to expend, and this must be left to his good
judgment.    The record shows that plaintiff interviewed
a great many witnesses, took a great many depositions,
procured a number of affidavits, drew the necessary plead-
ings, and, in short, did the work which appeared to him
as necessary and proper to be done.    After the case had
been on trial a number of days a settlement was reached,
and by the payment of approximately $79,000 the de-
fendants procured a dismissal of the suit, a settlement
of all the claims of their sisters, and had quieted in them
whatever interest these sisters might have had in their
father's estate.

After a settlement of that litigation plaintiff herein
instituted this action to recover for his fees in the sum of
$20,000.    The testimony of several witnesses was taken,
and they answered a hypothetical question which, in sub-
stance, related the nature of the litigation in which the
services were rendered, the amount of the property in-
volved, the consideration for the settlement, and assumed
that plaintiff had devoted the major portion of his time
from his employment in October, 1913, until February 28,
1914, in the service of defendants in that case.    The tes-
timony offered on behalf of plaintiff fixed the value of
his services at from $10,000 to $20,000.    This testimony
was given by a number of men eminent in their profes-
sion.    The verdict is fully sustained by the evidence.

Sandall v. Otto.

Appellants say that the chief error complained of is permitting the several witnesses for the plaintiff to answer the hypothetical question propounded to them. The question is subdivided many times, and each subdivision is argued at length in the brief. The question is very long, and we do not deem it expedient to set it out in full. It was propounded to the witnesses at the taking of the depositions prior to the trial of the case, and it undertook to state the facts as plaintiff expected to develop them on the trial. Defendants also took the depositions of a number of witnesses, and the hypothetical question which was propounded to their witnesses was, in substance, the same as that of which complaint is made. The language is so nearly identical as to suggest that each party had reached the same conclusion as to the facts. It may be said, from an examination of all the evidence, that the hypothetical question fairly reflected the case as made by plaintiff, and that this is all that is required. *Ward v. Ætna Life Ins. Co.,* 82 Neb. 499; *Hamblin v. State,* 81 Neb. 148. In propounding a hypothetical question a party may assume the existence of facts in accordance with his theory, if there is evidence in the record to sustain it, notwithstanding there may be a conflict of evidence on the point raised. Under any other rule it is seldom a hypothetical question could be submitted at all. There is generally a dispute as to the facts, and this can be settled only by the jury.

Again, on the cross-examination of defendants' witnesses, counsel for plaintiff, in substance, propounded his hypothetical question again and again and secured answers thereto. On the trial plaintiff declined to read this cross-examination. Defendants then voluntarily read the cross-examination making the testimony their own. In doing this, of course, they not only made the answers their own but the question itself. *Krier v. Milwaukee N. R. Co.,* 139 Wis. 207.

By way of conclusion, appellants say there is no competent evidence to sustain the verdict. This point, we

think, we have already fully covered. It is also said that the court erred in its refusal to submit special findings to the jury, and in its refusal to give certain instructions requested. All disputed questions of fact were submitted to the jury under proper instructions given by the court on its own motion. To quote from defendants' brief, "The court gave a correct general instruction." This being true, it was not error to refuse the instructions requested. No error is found in the record, and the judgment is

AFFIRMED.