LUCILLE H. MARTIN, APPELLEE, V. H. G. FREAR, DOING BUSINESS AS SUPERIOR TRANSFER, ET AL., APPELLANTS. LUCILLE H. MARTIN, ADMINISTRATRIX OF THE ESTATE OF MATHEW E. MARTIN, DECEASED, APPELLEE, V. H. G. FREAR, DOING BUSINESS AS SUPERIOR TRANSFER, ET AL., APPELLANTS.

167 N. W. 2d 69

Filed April 11, 1969. Nos. 36990, 36992.

Wagoner & Grimminger and John E. Dougherty, for appellants.

Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison and Downing & Downing, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

These cases involve claims made under the Workmen's Compensation Act, and the two actions were consolidated for purpose, of trial. Plaintiffs claim that Mathew E. Martin was injured in an accident on December 20, 1964, which resulted in his death on February 22, 1966. Defendants admit that Martin received a compensable injury from the accident as the same resulted in injury to Martin's neck, shoulder, and elbow, and for these injuries compensation was paid up to May 9, 1965. Defendants deny any further liability under the Workmen's Compensation Act for any other condition, complaint, medical expense, treatment, or the death of Martin. An award was made for both plaintiffs at a hearing before one judge of the compensation court, and on appeal to the district court for Nuckolls County, an award was affirmed in the plaintiffs, together with costs and additional attorneys' fees. Defendants' motion for new trial having been denied, appeal was made to this court.

On November 29, 1965, Martin, age 51 years, consulted with Dr. Maurice Edward Stoner, Omaha, Nebraska, for treatment. Dr. Stoner is a physician specializing and restricting his practice to diagnosis and internal medicine; and he is certified by the American Board of Internal Medicine. Martin gave the following personal history: On December 20, 1964, Martin was

employed by H. G. Frear, doing business as Superior Transfer, Superior, Nebraska, as a truck driver, and while being so employed was injured in an accident when the truck which he was driving overturned. He was treated by Dr. Paul Hallgrimson, Superior, Nebraska, beginning on December 21, 1964, for injury to his cervical region, shoulder, and right elbow. Treatment included massage, heat application, and also taking prescribed drugs for pain, muscle relaxant, and tranquilizers. He was dismissed by Dr. Hallgrimson on February 19, 1965. The pain and disability continued, and on February 25, 1965, Martin consulted with Dr. John G. Yost, Hastings, Nebraska, and was treated with physiotherapy until April 30, 1965. Martin was then referred to Dr. C. R. Weber, Hastings, Nebraska, who on May 8, 1965, performed a subtotal gastric resection (Billroth I) at the Mary Lanning Hospital, Hastings, Nebraska; Martin was dismissed from that hospital on May 15, 1965; and on the same night the operative incision was disrupted and there was a partial evisceration. Martin was returned to the hospital for corrective surgery by Dr. F. J. Rutt, Hastings, Nebraska, who resected a portion of the gangrenous bowel. Martin was dismissed from the hospital on May 26, 1965, but was readmitted for opiate addiction from May 30 to June 9, 1965. Prior to the accident on December 20, 1964, Martin had no unusual stomach trouble, his appetite was good, he used no aspirin or other drugs, and could eat anything. Beginning 2 or 3 weeks after the accident Martin began to experience abdominal and epigastric pain radiating to his back, which continued without interruption. Since June 9, 1965, he had constant abdominal discomfort, nausea and vomiting approximately weekly when his food intake was more than a minimal amount; he stated that he had a good appetite but that he was afraid to eat, because if he did he had a recurrence of nausea and vomiting, regardless of what kind of food he ate.

Following the personal history, Dr. Stoner also took

a family history and a past medical history, and made a detailed physical examination of Martin. Dr. Stoner observed that he was very nervous and agitated. Martin had several different kinds of drugs and aspirin with him that he said he was taking. Dr. Stoner identified some of the drugs as capable of causing ulceration of the intestional tract by ingestion, or ulceragenic. The next day radiology tests were made, and Dr. Stoner diagnosed Martin's condition as a perforation of a viscus in the abdomen. That night Martin was admitted to Creighton Memorial St. Joseph's Hospital, Omaha, Nebraska, where Dr. John Courtney, Omaha, Nebraska, in the presence of Dr. Stoner, surgically repaired a perforation of the viscus of the abdomen; a peritonitis condition was found; and Martin's general condition steadily deteriorated until his death on February 22, 1966.

At the trial in the district court, plaintiffs' evidence included witnesses Lucille H. Martin, widow of Mathew E. Martin, deceased, Dr. Paul Hallgrimson, and Dr. Maurice Edward Stoner, all appearing and testifying in person; Dr. Stoner heard the testimony of the other witnesses; after Dr. Stoner testified, the deposition of Dr. John G. Yost, was also received in evidence. Defendants offered no evidence.

Mrs. Martin's testimony shows that prior to Martin's accident, he had a good appetite, ate anything, and had no stomach trouble; that beginning 2 or 3 weeks after the accident Martin became nervous and began to have an upset stomach; that he took the medicines prescribed by the doctors as directed; that Martin took aspirin, but she did not know in what quantity; and that Martin experienced stomach upset, nausea, vomiting, and nervousness continually from June 9, 1965.

Dr. Hallgrimson's testimony shows that he treated Martin for his complaint of discomfort in the neck and shoulder; he prescribed drugs for pain, muscle relaxant, and sleeping; Martin made no other complaint; he discharged Martin to return to work on February 19, 1965;

and he told Martin that he could have the prescribed drugs as he needed them.

Dr. Yost, an orthopedic surgeon, testified that he treated Martin for a complaint of soreness in an area of the neck and shoulder; physiotherapy was used; this condition improved steadily, but on April 9, 1965, Martin's principal complaint was that he could not eat; no medication was then prescribed by Dr. Yost, but when Dr. Yost took Martin's personal history on February 25, 1965, Martin told him that he was taking pain and sleeping pills; Dr. Yost could not recall if he had prescribed aspirin for Martin; Martin's general condition deteriorated gradually; and X-rays were taken of the stomach and from the examination of these Martin was referred to Dr. Weber.

The only direct evidence supporting plaintiffs' claim of the amount and type of prescription drugs used by Martin was a statement from Chard Drug Store for the period December 26, 1964, to February 19, 1965, showing 11 different purchases of 9 different types of drugs. Dr. Stoner identified two of these drugs to be ulceragenic and the same kind that Martin said he was taking at the time of the original consultation.

Defendants urge that the trial court erred in admitting certain opinion evidence of Dr. Stoner for the reason that the opinions were predicated in part on facts not in evidence and medical reports either not in evidence, or received after the opinion was given. Dr. Stoner was a qualified medical expert and the treating doctor. His opinions were founded on a complete personal history, direct evidence heard by Dr. Stoner in the courtroom, a detailed physical examination, and observation and treatment of the patient. The rule is well settled in this state that: "The opinion of a physician or surgeon as to the condition of an injured or diseased person is not rendered incompetent by the fact that it is based upon the history of the case given by the patient to the physician or surgeon on his examination

of the patient, when the examination was made for the purpose of the treatment and cure of the patient." Mc-Naught .v. New York Life Ins. Co., 145 Neb. 694, 18 N. W. 2d 56. See, also, Annotation, 51 A. L. R. 2d 1057. The trial court properly received and considered this evidence.

Defendants complain that the evidence will not sustain the judgment for the reason that plaintiffs failed, to prove that Martin's death resulted from an accident arising out of and in the course of his employment. Further, that the causal connection between the injury and the accident was based upon possibilities, probabilities, and speculative evidence. We are directed to the testimony of Dr. Stoner:

"Q And in your opinion, Doctor, based upon your care and treatment and examination of Mr. Martin, did the diagnosis that you made on December 3rd of 1965 have any relationship within a reasonable degree of medical certainty in your opinion, Doctor, to the operation of May 3, 1965? * * *

"A After I saw the surgery, yes, I would say there was a reasonable connection. * * *

"Q Dr. Stoner, I would ask you, sir, based upon your examination and the history that you obtained from Mr. Martin and based upon the care and treatment that you gave him and your observation of him in the hospital, from the date of your first examination, up until the date of his expiration, February 22, 1966, do you have an opinion, Doctor, within a reasonable degree of medical certainty as to whether or not the condition which resulted in the death of Mr. Mathew Martin was causally related to the injury he received in the automobile accident of December 20, 1964? * * *

"A It is my opinion that the whole chain of circumstances began with the accident in December, 1964, and that this man was doomed by the events that followed, just as certainly as though you had known in advance

that you could have predicted all of this. One placed upon the other."

"Q Doctor, would you state the basis for that opinion * * *?

"A He suffers a painful injury, an injury of the cervical spine and dorsal spine, despite the fact that very little can be demonstrated on X-ray and physical examination; but because of the very nature of the neck it is a very painful thing causing him to take large quantities of analgesic drugs. These analgesic drugs then react into his system producing an ulcer. The ulcer requires surgery because a gastric ulcer—common medical practice dictates a gastric ulcer be removed because many times it is cancerous, and the only chance you have to cure them is by early removal. So his ulcer, being a gastric ulcer, necessitated surgery. The surgery was followed by a disruption and the disruption was followed by more surgery. The pain continues in his neck, the pain continues in his abdomen. He takes more drugs. He perforates again. This time the perforation produces such widespread peritonitis and his general condition by this time has become so deteriorated that he is unable to make a recovery from this final assault and he goes downhill and dies on February 22, 1966."

A hypothetical question was propounded to Dr. Stoner which included a fair summary of the evidence in the record and plaintiffs' theory of the case:

"Q * * * Based upon those facts and assuming those facts to be true, Doctor, do you have an opinion based upon a reasonable degree of medical certainty as to whether or not those conditions resulting in the death of this man on February 22nd of 1966 were causally related to the injury * * *? * * *

"A I would feel that there was a direct causal relationship between the accident and his death."

In Sandall v. Otto, 100 Neb. 263, 159 N. W. 406, we held: "In propounding a hypothetical question, a party may assume the existence of facts in accordance with

his theory, if there is evidence in the record to sustain it, notwithstanding there may be a conflict of evidence on the point raised." In addition to Dr. Stoner being the treating doctor, he was an expert on the subject matter included in the hypothesis; the answer was responsive and properly received by the trial court.

"When the question is medical, medicine must give us the answer." Campbell v. City of North Platte, 178 Neb. 244, 132 N. W. 2d 876. To recover in a workmen's compensation case, a claimant must offer proof which preponderates in his favor on each of the indispensable elements of his claim. See Seger v. Keating Implement Co., 157 Neb. 560, 60 N. W. 2d 598. "Where an expert witness gives an opinion based upon facts established by the record upon a matter recognized as a proper subject of expert opinion, unless impeached to such an extent as to have no probative value, it is ordinarily sufficient to sustain a verdict." McNaught v. New York Life Ins. Co., *supra*. See, also, Campbell v. City of North Platte, *supra*.

Defendants rely entirely on their cross-examination of plaintiffs' witnesses to establish their defense, which did not affect the probative value of their testimony. There is no support from the record of defendants' claim that the causal connection is based on possibilities, probabilities, and speculative evidence. Such conclusion would ignore the record and particularly the opinions of Dr. Stoner. From a review of the record we conclude that the plaintiffs have sustained the burden of proof that the accident caused the disability and the death of Mathew E. Martin.

The trial court included in its award an allowance of $500 for burial expenses. This is an error since the applicable statute applying in this case, section 48-122, R. S. Supp., 1963, provides for a maximum allowance of $400, and in that respect the award should be amended.

The award and judgment of the district court should be affirmed as modified, consistent with this opinion. Plain-

tiffs' attorneys are allowed a fee of $600 for their services in this court. § 48-125, R. R. S. 1943.

AFFIRMED AS MODIFIED.