REGAN, Judge.
Plaintiff, George Gunther, employed as a longshoreman, instituted this suit against the defendant, Strachan Shipping Company, his employer, endeavoring to recover workmen’s compensation at the rate of $30 per week for a period of four hundred weeks or, alternatively, $30 per week for a period of three hundred weeks, together with $1,000 for medical expenses, for total *544 and permanent or “temporary and total” disability resulting from the effect of an abscess caused by a cut incurred above his left ankle on July 22, 1953, while he was in the act of carrying a four foot crosscut saw he stepped into a pool of oil causing him to slip and fall a distance of about five or six feet from the wharf to the deck of a vessel which was being loaded by employees of the defendant.
The defendant answered and admitted the occurrence of the accident and resulting injuries to plaintiff’s buttocks and thigh, but denied that plaintiff’s left leg was cut in the course thereof or that the abscessed condition of the left knee and complications emanating therefrom had any causal connection with the accident.
From a judgment awarding plaintiff compensation at the rate of $30 per week for a period of four hundred weeks and $1,000 to cover medical expenses, the defendant has prosecuted this appeal.
Plaintiff related that .on July 22, 1953, at about 2:30 P.M. he was “lashing tractors in the hole of a ship” and was instructed by his foreman to procure a four foot crosscut saw from the wharf; while returning therewith he stepped upon some oil causing him to slip and fall fropi the “cap” of the wharf to the deck of ,the ship, a distance of about six feet, resulting in injuries to his buttocks and thigh and more specifically in a cut above his left ankle caused when hisTeg fell upon the saw; in consequence of the fall ,he was rendered unconscious and after recovery therefrom he was instructed to visit the office of'defendant’s physician, Dr. John Andrews, whose secretary obtained from him a history of the accident and resulting injuries, including the “cut”, although he believed it to be of little significance at the time. Thereafter he was examined by Dr.- Andrews, who prescribed treatment' only for the injuries to his buttocks and thigh. Plaintiff Visited this physician’s office thirty-one times or until October 10, 1953, when he terminated the relationship for the reason that'he felt that he was not improving under the prescribed treatment. Plaintiff’s wife, from the inception of the accident, treated his leg which, as we have said, plaintiff considered of little significance, until September or October and about January 29, 1954, pain in this leg caused him to consult James D. Parkerson, defendant’s chief accountant, who telephoned Dr. Andrews, and it was arranged to have plaintiff visit the offices of Dr. Daniel C. Riordan, an orthopedist. He discovered the existence of an abscess on the “medial aspect” of plaintiff’s left leg slightly below the knee and recommended immediate treatment. Plaintiff then informed Parkerson that he desired to secure treatment from a physician of his choice, Dr. Hanckes Klein, a, diagnostician, whom he saw on January 30, 1954. Dr. Klein examined the plaintiff and then requested his uncle, Dr. J. L. Hanckes, to incise the abscess and under considerable pressure it exudated about one and one-half ounces of pus. Plaintiff was then informed, that he would probably develop a “sinus area” that would have to be surgically removed later. He visited these physicians eleven times and on March 23, 1954, he was confined to Mercy Hospital, where Dr. Ernest S. Merse, on March 24, 1954, surgically excised the sinus area of the leg where the abscess formerly existed. Plaintiff was hospitalized for one week, remained at home in bed for two weeks and refrained from any type of work for about three months. Up until his first visit to Dr. Klein, plaintiff continued to perform the usual duties of a longshoreman, although he related that his leg began to interfere with his work about the end of November or beginning of December, 1953. Following the operation plaintiff felt that he was unable to fully resume all of the activities of a longshoreman and also refrained therefrom in conformity with the advice of his doctor, who says that he will continue to examine plaintiff periodically. However, since his recovery from the operation plaintiff readily admits that he is able to perform at least one phase of the duties of a longshoreman and that is “carpentry work”, which is seasonal ' and represents . about one-tenth of the scope of a longshoreman’s activities on the river front.
*545 While the defendant admits' the occurrence of the accident and the resulting injuries to plaintiff’s buttocks and thigh, it denies that plaintiff’s left leg was- “cut” in the course thereof. To substantiate this contention it offered in evidence the testimony of Dr. Andrews, who asserted .that on the day of the accident, when he examined plaintiff he did not observe nor was he informed of the existence of a “cut” on plaintiff’s ankle, although he was in an excellent position, during the course of the examination and subsequent treatment, to discover this injury if one existed.
The initial question of fact which the defendant has posed for our consideration is whether the plaintiff incurred “a cut on his leg on the day of the accident” and a careful examination of the record reveals no error in the trial court’s conclusion and it likewise convinces us that the evidence preponderates to the effect that such a “cut”, among other injuries, was incurred as a result of the accident.
The fundamental question of fact which the foregoing conclusion has now posed for our consideration is whether any medical correlation or causal connection exists between the trauma to the left leg or the “cut” sustained above plaintiff’s left ankle and the subsequent abscess which developed on the inside of his left knee about ten and one-half inches removed therefrom?
In order to substantiate, among other things, the causal connection between the. accident and resulting disability, two medical experts testified on behalf of the plaintiff, Doctors Klein and Merse.
Dr. Klein related that he has had “special training in physical diagnosis” which he teaches in the College of Medicine of Tulane University and he expressed the opinion that the cut caused by the saw or striking his leg on the wharf or deck of the ship could have caused the abscess and that an infection of this sort “could form any time from approximately * * * three weeks to six months.” In conclusion he was of the further opinion that the plaintiff could nbt resume the full rigorous duties of a longshoréman. • However, he planned to examine plaintiff periodically in order to determine the extent of his recovery.
Dr. Merse, a specialist with fourteen years experience in surgery, related that the first time that he saw the plaintiff- was when he performed the operation on March 24, 1954, and he was of the opinion that a “sinus tract” resulted from an infection of long standing and upon being interrogated “Now would you say that from the accident which the plaintiff in this case sustained on July 22nd, 1953, that six months later that this operation would be necessary * * * as a result of that trauma?”, he responded “Yes.”
Dr. John Andrews, a general practitioner specializing in industrial and compensation cases since 1945, testified on behalf of the defendant and related that on the day of the accident he examined the plaintiff and found that he “had a contusion of the upper one fifth of the right thigh and of the buttock with a hematoma formation”; that he did not discover any bruise or trauma in the vicinity of the left knee or a cut on the inside of the left leg two or three inches above the ankle, although he related that “we do not go through a complete physical examination on every patient by any manner or means, but whatever they tell us, we examine that part”; Dr. Andrews further testified that he did not see the plaintiff from .October 10, 1953 until April 21, 1954, which was a month after the operation, although, on January 29, 1954, he arranged to have Dr. Riordan examine him; that he again examined the plaintiff on November 26, 1954, which was about eight months after the operation, and he expressed the opinion that he had made an excellent recovery between that time and April 21, 1954 and that there was no reason, as of that date, why the plaintiff “could not do anything that he had ever done * * * he had lost nothing by the operation except some skin.” He further testified that if a cut or trauma was incurred by the plaintiff on the day of the accident that there exists no correlation between the accident of July 22, 1953 and *546 the abscess which was discovered on January 29, 1954.
Dr. Riordan, 'a specialist in orthopedics, testified on behalf of defendant and related that he never treated plaintiff as a patient, but simply examined him before surgery on January 29, 1954, and thereafter on January 4, 1955. He was of the opinion at the time of the initial examination. that plaintiff had fully recovered from “his back injury and buttock injury, that he had a subcutaneous abscess of the left knee, the origin of which can not be determined at this time * * *. It is recommended that this abscess be incised and drained as soon as possible. * * * the patient stated that he was refusing to get treatment from Dr. Andrews * * Dr. Riordan related that following the operation he again examined the plaintiff and found that “he had a large scar on the medial aspect of his left leg just below the knee. That is in the area where the patient had a fluctuant abscess before. The scar is somewhat depressed and is slightly tender ****** the left calf measured a quarter of an inch larger than the right and it was my opinion, at that time, that he had a little edema from the slightly contracted scar * * * but that he will be able to do all types of work as he did before”, although Dr. Riordan admitted that he had only a “general idea of the nature of longshoremen’s work.” In response to the question “In your opinion, how long would it take for a condition like this to flare up, if it was an infection that had lain dormant ?”, he very pertinently elucidated “If this were an infection that resulted, as the patient said, from the puncture wound of the saw, it was such a long' period of time from the time that he was injured until the time that I saw him with the abscess on his leg, * * * my feeling is that it probably was a sterile abscess, and if it was a sterile abscess, it could develop very slowly over a long period of time, but if it was an infected abscess, and as far as I can see, I don’t know whether it was infected or not, because no report of a culture (of pus pressed from the abscess before surgery) has ever been given to me •* * * they usually develop rather rapidly.”
Dr. J. Kelly Stone, a respected specialist with thirty years experience in industrial surgery, also testified on behalf of the defendant. He related that he had never personally examined the plaintiff — only the medical records covering his operation and confinement in the Mercy Hospital. He expressed the opinion, after emphasizing that these records gave no previous history of the patient’s complaints, but were confined to the operation and the report of the pathologist, “that it could not be the result of the trauma that he received to his knee in July and then manifest an abscess in January”; although on cross-examination upon being interrogated “Now, if he had a sterile abscess that developed slowly, could he probably work and get along alright with it?”, he responded “Yes, he would be more apt, to, I think.” The foregoing answer of Dr. Stone was predicated upon information given to him that the plaintiff had worked continuously until the operation.
It will be recalled that Dr. Andrews, in the course of testifying for the defendant that the plaintiff could resume his occupation as a longshoreman, remarked that plaintiff “had lost nothing by the operation except some skin”, yet, Dr. Klein related that “some of the fluid came ■ from a bursal sac, so he had * * * more than just a plain abscess * * * the whole area down to that sac was cut out and tied off * * * jt was down to the periosteum and down to the bone.” Dr. Merse, who performed the surgery, stated that the preoperative diagnosis was “calcified area of leg.” The operation was performed while plaintiff was under a general anesthetic and consisted of a complete “excision of calcified area of leg * * *. There was preparation of calcified duct. The calcified duct was injected by means of methylene blue and there were multiple stones which were excised by means of sharp and blunt dissection. Bleeding points were controlled by means of chronic ties. An iodoform pack was placed in the area and *547 the skin was closed by means of interrupted nylon.”
The laboratory report from the Department of Pathology of Mercy Hospital revealed “Skin and subcutaneous tissue showing sinus tract lined by granulation tissue, acute and chronic inflammation, fat necrosis, hemorrhage, fragments of crystalline material and foreign body giant cell reaction.”
In answering the fundamental question posed for our consideration affirmatively the trial court found as a fact that there was a causal connection between the accident and the subsequent abscess which developed on the medial .aspect of plaintiff’s left knee and a careful analysis of the record by us reveals no error in this conclusion.
In addition, to the expert opinion of the foregoing physicians there appears in the record the lay testimony of plaintiff’s wife and several fellow employees, which was principally offered in support of plaintiff’s contention that he is presently totally and permanently disabled, and it revealed the nature of plaintiff’s present work, i. e. “carpentry” and “pusher” which we understand is similar to a foreman. We have reviewed this testimony and find that it fully sustains the conclusions reached by plaintiff’s doctors that he is afflicted with an unstable knee, which is the ultimate effect of the injuries incurred by him on July 22, 1953, and which now militates against the full resumption of his former employment as a longshoreman.
 In several relatively recent cases we have observed of all the witnesses who testified in the case, only one is in a position to know absolutely and definitely whether the plaintiff is able to resume his former employment and that is the plaintiff himself. The medical experts offered by both sides to enlighten the court were in a position to express opinions only. Whenever the opinions of the experts are in substantial conflict they are of little assistance to us, and, ■ therefore, we must predicate our decision on the record as a whole, giving much weight to the lay testimony, the facts and environmental characteristics of the-case,.'.as well as to the conflicting opinions of the medical experts. After a comprehensive analysis of all of the facts, including the honest testimony of plaintiff, a man of about thirty-five years of age, his excellent prior work record, his present enthusiasm for continuous employment, his economic necessity therefor, and the nature of the injuries incurred by him, we believe that he has sustained the' burden of proof and hás established with that certainty which the law requires, his claim of total and permanent disability to perform the arduous duties of a longshoreman, which occupation we believe falls within the' judicial category of skilled or, at least, semi-skilled labor. We are fully cognizant of the caution which we must exercise in a case of this nature in view of the conflicting medical opinion as to the future possibility or probability of a full recovery, however, if plaintiff’s condition should improve in the future, the defendant may avail itself of the provisions of the Workmen’s Compensation Law, LSA-R.S. 23:1021 et seq,, which affords it the right to reopen the case after the lapse of six months. Ladner v. Higgins, 1954, La.App., 71 So.2d 242; Dixon v. T. S. Moss Tie Co., 1954, La.App., 70 So.2d 763; Jones v. Atlantic & Gulf Stevedores, 1949, La.App., 38 So.2d 653.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.