REYNOLDS METALS CO. *v.* CASH.

5-3544                                     390 S. W. 2d 100

Opinion delivered May 24, 1965.

*McMillan, McMillan & Turner,* for appellant.

*McMath, Leatherman, Woods & Youngdahl* and *John P. Sizemore,* for appellee.

CARLETON HARRIS, Chief Justice. This is a Workmen's Compensation case. Cecil Cash was an employee of Reynolds Metals Company, having been employed as an automobile mechanic for a number of years at the Jones Mill Plant near Malvern. According to the evidence, he attended church with his family on February 3, 1963, and, after lunch, complained of pains in his chest and arm, which continued until late afternoon. However, the pain subsided, and no medical aid was sought. Cash returned to his job on Monday morning, and worked through Wednesday noon. A short time after eating lunch, and while servicing a truck, he became ill, complaining of pains in the left arm and chest. He was taken to Hot Spring County Memorial Hospital, and, after the making of an electrocardiogram, his ailment was diagnosed as a coronary occlusion, and Cash was ordered to remain inactive. About fifteen or sixteen hours after admission, around 7:00 A.M. on Thursday, Cash suddenly died. Cause of death was determined as acute coronary occlusion due to atherosclerosis. Lucille Cash, widow, sought benefits for herself and an eleven-year-old son, contending that her husband had suffered a

compensable injury. The claim was controverted by appellants, and a hearing was held before a commission referee. This referee held that the claim was compensable, and on appeal, the full commission sustained the award. Thereafter, the Circuit Court affirmed the commission's finding. From the judgment so entered, appellants bring this appeal.

Reduced to the concise contention, appellants' argument is that the atherosclerotic condition, suffered by Cecil Cash, was entirely responsible for the acute coronary occlusion. It is asserted that this condition resulted from a gradual body process, occurring over a long period of time, and the work being performed by Cash on Wednesday, had absolutely nothing to do with the attack that occurred at that time. Mrs. Cash testified that her husband complained on Sunday, after eating, of pain in his arm and side; however, it subsided, and he went to work on Monday, apparently entirely normal. The fatal attack then occurred on Wednesday. It is not known whether Cash suffered a heart attack on Sunday, since he was not attended by a physician. The medical evidence reflected that this occurrence could have been the beginning of a heart attack, but, on the other hand, pains sometimes represent a digestive disturbance of some type. The family physician, Dr. W. F. Barrier, testified that Cash had frequently had attacks of acute pain in the stomach and abdomen for the last several years before his death, and, at times, had to be relieved by morphine. However, under our view, the question of whether Cash actually suffered a heart attack on Sunday is immaterial to the issue, for we have held that where there is substantial evidence that one's work aggravated an already existing condition, and hastened the injury of death, the claim is compensable, as arising in the course of, and out of, the employment. In the case of *Reynolds Metals Company* v. *Robbins*, 231 Ark. 158, 328 S. W. 2d 489, the workman, Robbins, suffered a heart attack, which admittedly had commenced before he had actually performed any labor. We said:

"The question therefore before this Court, is whether there was substantial evidence to show that Robbins' condition was aggravated by the work performed, as heretofore set out; or stated differently, whether his death occurred sooner than would have otherwise occurred if the work had not been performed."

That too, is the question here. Dr. Philip Cullen stated:

"In my opinion the work Mr. Cash was doing at the time of onset of his acute symptoms contributed to the severity of his disease and lessened his chances for survival."

Dr. Barrier also testified positively that the work Cash was performing "hurried" or aggravated the condition. Medical evidence was offered by appellants to the effect that the work being performed by Cash had nothing to do with the attack, but we are only concerned with whether there was substantial evidence to support the finding of the commission. Had the commission accepted the version of appellants' expert witnesses, we would likely also hold that a decision for the companies was supported by substantial evidence.

Appellants assert that, with the ailment suffered by Cash, activity of any kind would have contributed to the attack, i.e., he just happened to be engaged in his work, instead of participating in some other activity that would likewise demand effort. Of course, we do not know whether the attack would have occurred if Cash had been fishing, or driving, or playing golf—nor is this knowledge held by anyone else. We do, however, know that he was working on his job, and that the physicians, heretofore mentioned, stated that the work aggravated his condition, and hastened his death. Of course, if Cash suffered a heart attack on the preceding Sunday, and a doctor on that date had found that to be true, Cash would have undoubtedly been ordered to bed, and directed to refrain from activity of any nature—but no physician was called, and no one really knows whether he actually

492

suffered an attack at that time. People frequently have chest pains which are not related to heart disease, and we consider it an accepted fact that unless pains are quite severe, the average person does not immediately call a physician. The record reflects that Mr. Cash had had intense pain, at times, for ten years, which probably (according to the family doctor) was caused by an improper functioning of the liver and gall bladder. At any rate, we do not think Cash can be blamed for not consulting a physician on Sunday. The record in this case does not clearly reveal just when the attack started —but it did start—either before or during work—such work[1] (according to medical evidence), hastening his demise.

Affirmed.

[1] Although not controlling, there is evidence that the job performed by Cash was rather strenuous, requiring a constant uplifting of the arms, and there is evidence that, after his death, two men were given the job of performing his normal duties.