(No. 45277.— ▮▮▮▮▮▮▮▮▮▮)

EXCELSIOR LEATHER WASHER COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*— (Esther Klein, Appellee.)

*Opinion filed June 4, 1973.*

HACKBERT, ROOKS, PITTS, FULLAGER & POUST, of Chicago (DOUGLAS S. STEVENSON and WILLIAM M. STEVENS, of counsel), for appellant.

TUITE, MORRISSEY, GESMER & FINNEGAN, of Rockford (JASON GESMER and GERALD F. TUITE, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal by Excelsior Leather Washer Company (hereinafter Excelsior) from a judgment of the circuit

court of Winnebago County. The court affirmed an award granted by the Industrial Commission to claimant, Esther Kleine, for an injury sustained on August 5, 1967, while she was employed at Excelsior. Excelsior primarily maintains that the Commission's decision that claimant's injury was causally related to her employment was improper.

Claimant, who was 53 years of age on the date of the incident, was the only witness to testify before the arbitrator (October, 1969). She stated that she had been a diabetic for about 30 years prior to the time she was hired by Excelsior (1966) and that her employer was aware of her condition.

On the day preceding the incident, she said that she was given a large, tightly packed bag containing strips of twisted leather which were to be cut by a machine. This bag was later described as weighing about 100 pounds. She was unable to remove the strips from the bag and so informed her supervisor, Ronald Miller. He told her to try and that he would empty the bag the following morning if she was unable to do so.

On that day Miller placed the bag on a table near claimant but he did not empty it. Claimant testified that she again requested Miller's assistance in emptying the bag but he told her to continue her efforts. She then stood on two smaller bags of leather and began to shake the large bag in order to loosen the contents. At this time she experienced a "snap" in her back and she claimed that she felt a severe pain in the left part of her head and numbness in her hands. She also said that her left eye became milky and that she lost her vision in that eye. She stated that she immediately reported the incident to Miller as she had been instructed to do. Upon further inquiry as to what she noticed at the time of the incident in question claimant responded that "it upset me so much at the time I didn't notice anything and no pain for about two weeks and the pain just got terrific in temple and whole half top of the eye."

Claimant continued her employment after the incident although she said that the left part of her head "has never quit hurting." During this time she wore an eye patch or covered her left eye with her hand when she experienced intense pain. On June 5, 1968, claimant was discharged on an unrelated matter and thereafter filed her claim for compensation.

Prior to the incident in question, claimant stated that her sight in both eyes was adequate although her eyes became tired and her vision blurred. At the time of the hearing, she could only discern light in her left eye at certain times.

The record reveals that on August 24, 1967, claimant experienced difficulty with her vision. That day she visited Dr. Roland Pritikin, an ophthalmologist, whose name she found listed "on the bulletin board." In November, 1967, she went to Dr. Robert Norris at Excelsior's request after complaining of her condition.

On cross-examination Excelsior produced a two-page handwritten letter dated October 19, 1967, and addressed to Dr. Pritikin. Claimant initially said that the handwriting "partially resembled" her own. She then denied writing the letter but subsequently admitted the authenticity of her signature although she claimed that she did not write the first page. This letter was admitted into evidence before the Commission without objection and reads as follows:

"Dear Sir:

I received a letter from you, today, in regard to my eye injury. My injury, as you said at the time, was not caused by diebetis [sic] but by strain when I dumped a bag of leather. I would like a statement in which you do not mention the diebetis [sic] —that only will tend to complicate matters. I completely lost the vision in that eye, and after other treatments, my vision was restored, but fades when the vertibrae [sic] slip.

Please send me a statement stating what you told me that the blood vessels ruptured, due to strain, at work. And that I paid you $15.00 for your service. That is all. The Co. knows [page 2] I'm diebetic [*sic*].

This is not a lie, and your statement will coincide with that of the other Drs.

Please forward desired statement by return mail.

> Respectfully yours
> Esther Kleine
> 1319 - 11th St.

P.S.
My boss was standing right beside me when I lifted the bag, and something popped in the back of my neck & head." (Emphasis in original.)

The arbitrator denied compensation, finding that claimant had failed to establish a causal connection between the incident and her condition.

On review before the Commission in February, 1971, claimant stated that she had visited numerous physicians including Dr. James Seiverson, to whom her attorney had directed her. She said that between May and August, 1970, she lost the vision in her right eye and that she presently could not see. She was unable to remember the letter sent to Dr. Pritikin.

Dr. James Seiverson, an eye specialist, testified that he had examined her on two occasions (August, 1970, and February, 1971). He found that she had glaucoma in the left eye and had vision in each eye limited to light perception with an ability to perceive vague shapes to some extent in the right eye. He further said that both eyes suffered from iritis, a condition he characterized as an inflammation of the iris of the eye. He was precluded from examining the posterior portion of the eyes because of numerous hemorrhages and vitreous material found therein.

In response to a hypothetical question based upon the evidence, Dr. Seiverson stated that in his opinion a

pre-existing condition of diabetic retinopathy might have been aggravated by the accident thereby precipitating a hemorrhage in the left eye. He explained that the longer a person has diabetes the greater the possibility of retinal hemorrhage because the weakened blood vessels might break if blood pressure increases and this is compounded by an emotional trauma or fall. He described the condition of claimant's right eye as entirely due to diabetes.

On cross-examination he said that except for claimant's history there was not a significant difference between her eyes at the present time. He described claimant's condition of diabetic retinopathy as progressive and stated that any person so afflicted might sustain a hemorrhage at any time but that such occurrence might also be caused by an aggravating incident. However, he was unable to determine the length of time during which claimant had been subject to diabetic retinopathy, and he stated that his opinion as to her present condition and the accident was derived from the history related to him and not from his examination.

Dr. Roland Pritikin testified from information contained in his records. He said claimant had visited him on August 24, 1967, complaining of poor vision in her left eye and the possible need for glasses. She did not mention an accident involving her eye. He examined her and found that she had diabetes and was excessively overweight. His eye examination, which included an inspection of the deeper eye structures, indicated that she had alterior sclerotic retinopathy in both eyes and this diagnosis was more pronounced in the left eye. This condition was described as a thinning of the artery walls and an engorging of the veins resulting in a diminution of vision. His examination did not reveal any recent hemorrhage although he said evidence of such might disappear within a few weeks or months. This examination further indicated that claimant was industrially blind in her left eye.

Letters from two other physicians were introduced.

Dr. Norris, who examined claimant in November, 1967, wrote that he detected a hemorrhage in her left eye. "This patient claims that the loss of vision out of her left eye occurred suddenly while lifting a heavy load, at work. It is possible that the increase in blood pressure caused by the effort could break a retinal blood vessel and the hemorrhage, especially in a diabetic person." In his letter Dr. Chester Roe, who examined claimant in July, 1968, stated that he was unable to determine whether the condition of claimant's left eye was caused by "direct injury or a spontaneous hemorrhage."

Based upon the aforementioned testimony and exhibits the Commission granted an award to claimant for her total temporary incapacity and permanent and complete loss of the left eye.

Excelsior now argues that the condition of claimant's eyes "is fully explained by the natural progression of her long-standing diabetes" rather than from the accident in question. To support its position Excelsior alludes to the findings of Dr. Pritikin which disclosed no sign of a recent hemorrhage in claimant's left eye and the fact she returned to work after the incident. However, Excelsior places prime reliance upon the testimony of Dr. Seiverson regarding causal relationship, which it characterizes as merely presenting a choice of two views which are equally compatible to the evidence. It concludes that claimant has failed to sustain her burden of proof as to this issue.

The testimony of Dr. Pritikin is not dispositive upon this issue for he stated that signs of hemorrhaging might disappear within several weeks of the occurrence. His testimony merely presented a question of fact to be resolved by the Commission in reaching its decision. Nor is claimant's return to work determinative as to the issue of causal connection. *Jewel Tea Co. v. Industrial Com., 39 Ill.2d 180, 185.*

In the present case claimant stated that prior to the

date of injury her vision in both eyes was adequate but thereafter she experienced pain and difficulty with her left eye. This testimony tends to support her position as to the issue of causal relationship. (See *Hartwell v. Industrial Com., 51 Ill.2d 562, 566.*) Her letter to Dr. Pritikin and that written by Dr. Norris, which were submitted by Excelsior, also reiterate the circumstances giving rise to her condition. (*Cf. General Carbon Co. v. Industrial Com., 50 Ill.2d 273, 276.*) Furthermore, Dr. Seiverson's response to a hypothetical question encompassing the facts in evidence in which he concluded that the injury may have been causally related to the employment remains unrebutted. See *Guardian Electric Mfg. Co. v. Industrial Com., 53 Ill.2d 530, 535; Kerz v. Industrial Com., 51 Ill.2d 319, 322.*

Excelsior further contends that Dr. Seiverson's opinion was improper for it was based solely on claimant's testimony, without any medical findings to differentiate the condition of the left eye from the right eye, and that no objective condition or symptoms were proved as required by statute. (Ill. Rev. Stat. 1967, ch. 48, par. 138.8(b)(7).) We do not agree that Dr. Seiverson's testimony was inadmissible as it pertained to causal relationship for "the mere fact that an examining physician obtains a history from the patient does not disqualify his expert testimony based *** upon a hypothetical question." (*Crane Co. v. Industrial Com., 32 Ill.2d 348, 353.*) Moreover, as we have said, " 'Proof of the state of the health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. [Citation.] Where an injury has a characteristic result the result is an objective symptom.' " (*Union Starch & Refining Co. v. Industrial Com., 37 Ill.2d 139, 143,* quoting from *Plano Foundry Co. v. Industrial Com., 356*

*Ill. 186, 198-99.*) We find that the evidence presented sufficiently established the objective symptoms necessary to demonstrate that the condition of her left eye may have been related to her employment.

A claimant must establish a causal relationship between her injury and employment, and the Commission's decision regarding this issue will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Wise v. Industrial Com., 54 Ill.2d 138.*) A claimant need not show that her occupation was the sole causative factor of the injury but only that it was a causative factor. (*Board of Trustees of the U. of I. v. Industrial Com., 44 Ill.2d 207, 214.*) After consideration of the record, we cannot say that the decision of the Commission was contrary to the manifest weight of the evidence.

Excelsior finally contends that claimant's testimony is unsupported and contradicted by other evidence. It submits "that the Commission's acceptance of her testimony is contrary to the manifest weight of the evidence." Basically, Excelsior's argument raises a question as to claimant's credibility. However, such determination is the primary responsibility of the Commission. (*Swift and Co. v. Industrial Com., 52 Ill.2d 490, 496.*) Claimant testified before the arbitrator and Commission and we do not find that the Commission's determination as to her credibility was improper.

Accordingly the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*