## BARKSDALE LUMBER COMPANY
### et al *v.* Lois McANALLY

77-191                                      557 S.W. 2d 868

Opinion delivered November 7, 1977
(Division II)
[Rehearing denied December 19, 1977.]

*Gene Matthews, Jr.,* of *Wootton, Land & Matthews,* for appellants.

*Travis Mathis,* for appellee.

JOHN A. FOGLEMAN, Justice. Arthur Dale McAnally collapsed and died at his place of employment with Barksdale Lumber Company on August 6, 1973. He left appellee as his widow. The Workmen's Compensation Commission allowed her claim for death benefits under the Workmen's Compensation Act. Appellants contend that the Commission acted in excess of its powers, because the facts found by it do not support the award and because the competent evidence in the record was not sufficient to warrant its being made. Appellants concede that the sole issue is whether McAnally's employment caused the heart attack he suffered and his resulting death. Essentially, the question is whether there is any substantial evidence to support the finding of the Workmen's Compensation Commission (affirmed by the circuit court), that McAnally's death resulted from an accidental injury arising out of and in the course of his employment. We find that there is, and affirm.

On the day of his death, McAnally had been performing his usual duties, which consisted of laying wood strips across lumber as it was stacked by an automatic stacking machine

controlled by a co-worker, who was also laying strips. The strips were 7 feet long, 1 ½ inches wide and about 3/4 inches thick and were accumulated on a rack behind a platform on which McAnally worked. The five strips laid by McAnally between each layer of lumber ·weighed about 12 pounds 11 ounces in all. McAnally performed his regular duties on the morning of his death prior to the 11:30 to 12:30 lunch hour. After the lunch hour, and during a stoppage of the work about 1:00 p.m., he had walked to a point where some of the strips had become disarranged as they were being transported to his work station. After straightening the strips, he returned to the platform on which he worked and was talking with his co-worker, Pearlie Mae Harris, when he collapsed and died.

McAnally had been under treatment by Dr. Driver Rowland, a cardiologist of Hot Springs, between February 1, 1972 and June 1, 1973, for pains in his chest with radiation into his arms, diagnosed as angina pectoris, first precipitated by exertion at his work. Later, these attacks occurred both with and without exertion and were related, on occasion, to emotional upset. It was determined that McAnally, who was 61 years of age when he died, had arteriosclerotic heart disease involving the coronary arteries. Medical testimony as to the cause of death was given by two physicians. They were Dr. Driver Rowland and Dr. Eli Gary, a general practitioner at Arkadelphia, who had never treated McAnally and had not been acquainted with him. Dr. Rowland testified that McAnally's work did not precipitate the heart attack or aggravate his condition or cause his death. Dr. Gary expressed the opinion that McAnally's work did cause or contribute to his death. The death certificate, made by Dr. W. R. Keddle of Greenwood showed the cause of death as myocardial infarction.

McAnally's widow testified that he had been experiencing pain during the week previous to his death, that he had eaten little on the morning of his death and the evening before, and that he had complained of pain in his chest when he left home, going to work. She said that, after his first episode of pain, McAnally was able to do less and less as time progressed, and had ceased mowing his lawn and doing other

chores around the house. Pearlie Mae Harris testified that, while McAnally never complained about any difficulty in doing his work, she could tell that at times he was "kindly tired." Tommy Barksdale testified that, while for someone unaccustomed to it, the work was "pretty fast," the more one did it, the more routine it became. He said the work was actually not heavy or strenuous but more strenuous than sitting.

Appellants recognize the governing rules stated in *Bettendorf & Company* v. *Kelly*, 229 Ark. 672, 317 S.W. 2d 708, and many other cases, that an accidental injury arises out of employment when the required exertion which produces the injury, as the sole or a contributing cause, is too great for the person undertaking the work, whatever the degree of exertion or the claimant's condition of health and that an injury is accidental when either the cause or result is unexpected or accidental, although the work being done is usual or ordinary. Appellants, however, argue that the lay testimony does not constitute substantial evidence that McAnally's heart attack was an accident that occurred by reason of and in the course of his employment and that the medical testimony is the only evidence to be considered in determining the question. Assuming, without deciding, that appellants are correct in their evaluation of the lay testimony, we cannot say that there was no substantial evidence to support the commission's finding on this question.

Appellants contend that we should reverse the award in this case because Dr. Rowland, on whose opinion they rely, was an eminent cardiologist and McAnally's treating physician, while Dr. Gary was a general practitioner, who, having never seen the patient, stated an opinion based upon an assumption that the history of McAnally's arteriosclerotic heart disease and its symptoms and manifestations had been correctly given, and who recognized Dr. Rowland's expertise and would give great weight to the treating physician's opinion over his own.

Appellants are apparently laboring under some misconceptions that we must lay aside in approaching the basic problems. Their argument is directed almost entirely toward

the proposition that the claimant failed to meet her burden of proof that the heart attack was an accident, occurring by reason of, or in the course of, McAnally's employment, by a preponderance of the evidence. This question is of no moment to us, because that determination is for the commission and we affirm if there is any substantial evidence to support the commission's ultimate finding that the heart attack was, in fact, an accidental injury arising out of, and in the course of his employment. *Reynolds Metals Co. v. Cash*, 239 Ark. 489, 390 S.W. 2d 100; *Turner v. Lambert Construction Co.*, 258 Ark. 333, 524 S.W. 2d 465; *Arkansas Foundry Co. v. Cody*, 251 Ark. 57, 470 S.W. 2d 812; *Reynolds Metals Co. v. Cain*, 243 Ark. 483, 420 S.W. 2d 872; *Olin Mathieson Chemical Co. v. White*, 239 Ark. 833, 394 S.W. 2d 632. The commission's finding in this respect has the same force and effect as a jury verdict, so we cannot reverse the commission's findings, unless we could reverse a judgment based upon a jury verdict on the same question. *Wilson & Co. v. Christman*, 244 Ark. 132, 424 S.W. 2d 863; *Warwick Electronics, Inc. v. Devazier*, 253 Ark. 1100, 490 S.W. 2d 792; *Arkansas Coal Co. v. Steele*, 237 Ark. 727, 375 S.W. 2d 673.

We agree with appellants that Dr. Rowland's qualifications are impressive and entitled to great weight and, were we privileged to weigh the evidence on trial de novo, we might well agree that the preponderance of the medical evidence showed that McAnally's fatal heart attack was not an accident that occurred by reason of and in the course of his employment, and that the fact his death occurred while he was at work was merely a coincidence. Still, as we have pointed out, this is not within our province. See also, *Oak Lawn Farms v. Payne*, 251 Ark. 674, 474 S.W. 2d 408. It is quite clear that the evidence would support a finding contrary to that made by the commission, but the question before us turns solely upon the existence of substantial evidence to support the award made, even though the commission has resolved all inferences in favor of the claimant and had given the evidence the most liberal construction possible in favor of the claimant. *Brower Mfg. Co. v. Willis*, 252 Ark. 755, 480 S.W. 2d 950; *Reynolds Mining Co. v. Raper*, 245 Ark. 749, 434 S.W. 2d 304.

In determining whether the evidence was substantial, we must consider only that evidence which is most favorable to the commission's finding, and view, weigh and interpret it along with all reasonable inferences deducible therefrom, in the light most favorable to those findings. *Clark* v. *Shiloh Tank & Erection Co.,* 259 Ark. 521, 534 S.W. 2d 240; *Westark Specialities, Inc.* v. *Lindsey,* 259 Ark. 351, 352 S.W. 2d 757; *Pufahl* v. *Tamak Gas Products Co.,* 238 Ark. 895, 385 S.W. 2d 640; *Superior Improvement Co.* v. *Hignight,* 254 Ark. 328, 493 S.W. 424; *Warwick Electronics, Inc.* v. *Devazier,* supra. It will be given its strongest probative force in favor of the commission's action. *Holland* v. *Malvern Sand & Gravel Co.,* 237 Ark. 635, 374 S.W. 2d 822.

Viewing it as we must, the evidence, except for the conflict in the medical testimony, shows:

McAnally had first experienced the pains symptomatic of his condition in 1972, and he continued to have them intermittently until his death, sometimes as the result of exertion and sometimes not. He was then found to have hypertension and coronary artery disease, also known as arteriosclerotic heart disease, involving the coronary arteries. He had probably suffered a myocardial infarction at that time. His condition gradually became more severe and his symptoms more easily produced by less exertion. This was compatible with his disease. In such cases, the victim reaches the point where he is disabled, even at rest. With this disease, the flow of blood to the heart is curtailed. It was after the onset of the first symptoms, that McAnally ceased mowing his lawn and doing chores around the house. He often complained of pain in the morning before he went to work and, more often, in the evening after work, when he would sit on his doorstep for a while before going into the house. Before his death, he was eating little. He complained of pain in his chest when he left home on the morning of his death. There were times when he showed signs of fatigue at his work. One's body requires a greater supply of blood and oxygen for acts of physical exertion, such as walking, than for sitting.

Dr. Gary testified that, in his opinion, McAnally's arteriosclerotic heart disease cut down the circulation of his blood and its supply to his heart, and that the greater the exertion, the worse the condition became, because the heart requires more blood when one is working; and, if it does not get enough blood, a myocardial infarction would result. He agreed with the statement of Dr. Rowland that an arteriosclerotic heart condition often reached the point where any exertion would create too great a demand on the heart for oxygen and can be so severe that the patient becomes disabled even at rest, much less slight exertion. He suspected that the work McAnally was doing may have been, to a reasonable degree of certainty, a contributing cause of his death, and, in his opinion, he thought it was. It appeared to Dr. Gary that the demand created by the exertion of McAnally's employment on the day of his death was greater than the heart could supply. He said that the fact that McAnally's collapse actually occurred when he was standing and talking and not performing any of the duties of his employment was not unusual because the acute effects of a myocardial infarction may not appear for 30 or 40 minutes after it actually occurs and that, in McAnally's case, it could have actually occurred before the lunch hour.

Weighing the evidence fell within the province of the commission. In doing so, it must necessarily weigh medical evidence as it does any other evidence. When medical testimony is conflicting, the resolution of the conflict is a question of fact for the commission. *Turner v. Lambert Construction Co.*, supra; *Grimsley v. Manufacturer's Furniture Co.*, 224 Ark. 769, 276 S.W. 2d 64; *Mechanics Lumber Co. v. Roark*, 216 Ark. 242, 224 S.W. 2d 806. When the commission chooses to accept the testimony of one physician in such cases, the courts are powerless to reverse the commission's conclusion in this regard. *Arkansas Workmen's Compensation Comm'n v. Sandy*, 217 Ark. 821, 233 S.W. 2d 382; *Mechanics Lumber Co. v. Roark*, supra.

It is extremely difficult to come to grips with appellants' argument that Dr. Gary's testimony is not substantial evidence. It is tacked on to their argument that the commission's finding was clearly against the preponderance of

the evidence at the very end of appellants' brief, as if it were an afterthought. The only argument advanced is that reasonable men would not believe the testimony of Dr. Gary over that of Dr. Rowland. A similar argument was advanced and rejected in *McCloud v. Beth-Elkhorn Corp.*, 514 S.W. 2d 46 (Ky., 1974). Appellants do not refer to any objection they made to the testimony of Dr. Gary even though they now seem to question his competency. This is a question they cannot raise for the first time on appeal. *Foster v. Ft. Smith Cotton Oil Co.*, 224 Ark. 394, 273 S.W. 2d 529. Dr. Gary testified that he had been engaged in the general practice of medicine in Arkadelphia for about 23 years and had treated quite a few heart cases.

We assume that the same arguments advanced in support of appellants' contentions on the preponderance of the evidence are also directed toward its substantiality. One of these attacks is that Dr. Gary was not the treating physician. This factor goes to the weight to be given to the testimony, not its substantiality, unless, of course, the doctor's opinion, unlike that of Dr. Gary, was based upon a mistake of fact or arrived at without information as to a factor essential to his conclusion. See *Rhea v. M.-K. Grocer Co.*, 236 Ark. 615, 370 S.W. 2d 33; *Holstein v. Quality Excelsior Coal Co.*, 230 Ark. 758, 324 S.W. 2d 529; *Backstrom v. Turner Construction Co.*, 284 App. Div. 368, 132 N.Y.S. 2d 126 (1954). Where an injury or disease is such as to require a person skilled in medicine to determine its cause, a medical expert may testify to his opinion thereof based upon his scientific deductions from given facts. *Bethlehem-Sparrow Point Shipyard v. Scherpenisse*, 187 Md. 375, 50 A. 2d 256 (1946). A medical expert's opinion may be based on testimony in the case or an assumed state of facts which the evidence tends to establish. *Excelsior Leather Washer Co. v. Industrial Commission*, 54 Ill. 2d 318, 297 N.E. 2d 158 (1973); *Texas State Highway Dept. v. Fillmon*, 150 Tex. 460, 242 S.W. 2d 172 (1951); Accord, *Ben M. Hogan Co., Inc. v. Nichols*, 254 Ark. 771, 496 S.W. 2d 404; *Williams v. Cantwell*, 114 Ark. 542, 170 S.W. 250. Where a medical expert witness gives an opinion based upon facts established by the record upon a matter recognized as a proper subject of expert opinion, it is ordinarily sufficient to sustain an award, unless impeached to such an extent as to have no probative value. *Martin v. Frear*,

184 Neb. 266, 167 N.W. 2d 69 (1969). See also, *Chapman v. Foremost Dairies, Inc.*, 249 S.C. 438, 154 S.E. 2d 845 (1967). The fact that Dr. Gary never examined McAnally was a matter going to the weight to be given his testimony, but its probative value was not necessarily destroyed. *Anderson v. Campbell Tile Co.*, 202 S.C. 54, 24 S.E. 2d 104 (1943).

The fact that he was a general practitioner, rather than a specialist in heart diseases, also is a matter relating to the weight of his testimony and its probative force, rather than its substantiality, at least where the matter in question was not totally outside the field of his practice. *Board of Public Education v. Rimlinger*, 232 A. 2d 98 (Del., 1967); *McCloud v. Beth-Elkhorn Corp.*, supra; *Hamilton v. Doty*, 65 N.M. 270, 335 P. 2d 1067 (1958); *Cabell Concrete Block Co. v. Yarborough*, 192 Md. 360, 64 A. 2d 292 (1948); *In re Ambrose's Case*, 335 Mass. 121, 138 N.E. 2d 630 (1956). See also, *Haynes v. Industrial Commission*, 19 Ariz. App. 559, 509 P. 2d 631 (1973); *Theodore Fleisner v. Dept. of Industry*, 65 Wis. 2d 317, 222 N.W. 2d 600 (1974). Cf. *American Enka Corp. v. Sutton*, 216 Tenn. 228, 391 S.W. 2d 643 (1965). Qualifications of a physician who is without special training with reference to the particular disease or condition are a matter for the commission. *In re Ambrose's Case*, supra.

The fact that Dr. Gary's testimony may have been erroneous and in conflict with the opinions of more celebrated experts does not destroy its probative value or make it incredible as a matter of law, where it is not so contrary to common sense or so clearly based upon conjecture that it must be disregarded. *Bohan v. Lord & Keenan*, 98 N.H. 144, 95 A. 2d 786 (1953); *Murphy's Case*, 328 Mass. 301, 103 N.E. 2d 267 (1952); *Smith v. Southern Builders*, 202 S.C. 88, 24 S.E. 2d 109 (1943).

In its admission and consideration of the evidence, including the medical testimony, the commission was not bound by the rules of evidence that might have applied in a civil action. Instead, it was free to make such inquiry and to conduct the hearing in such manner as would best ascertain the rights of the parties. Ark. Stat. Ann. § 81-1327 (a) (Repl. 1976). We have said that the commission has broad discre-

tion with reference to admission of evidence. *Northwestern National Insurance Co.* v. *Weast,* 253 Ark. 710, 488 S.W. 2d 322 (1972).

Our statute provides that verified medical reports shall be accorded such weight as may be warranted from all the evidence in the case. Ark. Stat. Ann. § 81-1323 (c) (Repl. 1976). Although the statute seems to have specific application to verified reports, the principle is in accord with the weight of authority holding that, when medical opinions conflict, the commission may resolve the conflict in the light of the record as a whole, and, in that light, reach the result that accords with reason, justice and common sense. *Benjamin F. Shaw Co.* v. *Musgrave,* 189 Tenn. 1, 222 S.W. 2d 22 (1949); *Buda* v. *Industrial Commission,* 377 Ill. 215, 36 N.E. 2d 253 (1941); *Gunther* v. *Strachan Shipping Co.,* 85 So. 2d 543 (La. App., 1956); *Fisher* v. *Buffalo Electric Co., Inc.,* 2 A.D. 2d 612, 151 N.Y.S. 2d 959 (1956). This statutory principle should apply to all medical evidence.

The medical soundness and probative force of Dr. Gary's testimony was a question for the commission. *Smith* v. *Southern Builders,* supra; *Johnson* v. *Gulfport Laundry & Cleaning Co.,* 249 Miss. 11, 162 So. 2d 859 (1964).

The gist of the whole matter is succinctly stated by Prof. Larson thus at 3 Larson's Workmen's Compensation Law 15-413, § 80.20:

> In summing up the problem of conflicting medical testimony, one may recall Alexander Pope's famous line in which he asks: "Who shall decide when doctors disagree?" In workmen's compensation the answer is easy: The Commission decides.

Since we cannot say that the testimony of Dr. Gary was without any probative value, we must affirm the judgment.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.