Warren BRADFORD *v.* ARKANSAS STATE
HOSPITAL and ARKANSAS WORKERS'
COMPENSATION COMMISSION

CA 80-48                                    603 S.W. 2d 896
Court of Appeals of Arkansas
Opinion delivered September 3, 1980

*Paul D. Capps* of *Thurman & Capps, Ltd.*, for appellant.

*H. Oscar Hirby*, for appellees.

STEELE HAYS, Judge. Appellant seeks to reopen a joint petition settlement of a Workers' Compensation claim entered into many years ago. The Commission, in a divided opinion, agreed with the Administrative Law Judge that the Commission did not have jurisdiction to reopen the claim. The Commission was affirmed by the Circuit Court and the case is before us on appeal. We, too, affirm the Administrative Law Judge, the Commission and the Circuit Court.

Claimant experienced a heart attack on February 21, 1966, while employed by the Arkansas State Hospital. In June, a claim was filed with the Workers' Compensation Commission asserting that claimant's attack was brought on by his work. A joint petition was filed, presumably in November, 1966, alleging that the parties had agreed to a compromise, the claimant to receive $11,390.00, attorney's fees and "reasonable future medical expenses." The joint petition in the record is undated, unverified, and bears only the signature of the claimant. Spaces for the signature of claimant's attorney, respondent's attorney, and a notary public are left blank. There is confusion as to the claim number in that the original claim bears one number, a different number is typed on the joint petition and order and yet a third number is underlined in pen or pencil on both.

On November 7, 1966, an order of a Referee of the Workers' Compensation Commission was filed, reciting that the parties were seeking approval of their joint petition on the basis of $11,390.00 to the claimant, $1,501.84 to his attorney, and $621.84 itemized among the hospital, physician and pharmacist. The order stated that claimant had testified at a hearing on November 4, that he understood the settlement was final and the claim "closed forever" and further reciting that the Commission would have no jurisdiction over claimant's injury after payment of the stated sums. Nine and one-half years later, on May 24, 1976, an Administrative Law Judge order appears in the record, stating that the claimant sought to have the earlier joint petition order set aside because the settlement intended that the employer pay future medical expenses, whereas the joint petition order failed to so provide. No petition, motion or other pleading accompanies the order, so the method by which the claimant moved to vacate the order is not revealed to us. The order states that the claimant testified before the Administrative Law Judge that he would not have entered into the settlement but for payment of future medical expenses; he further testified that "shortly after" the 1966 hearing he submitted medical bills to his employer and payment was refused.

Referring to claimant's contention that a fraud was perpetrated in connection with the joint petition settlement, the Administrative Law Judge stated that "even if" fraud had occurred the claimant had waived any recourse by waiting nine and one-half years after becoming aware of the refusal of his employer to pay medical bills. The Administrative Law Judge concluded that the Commission did not have jurisdiction to set aside the joint petition order.

Claimant appealed to the Commission which affirmed the Administrative Law Judge. The Commission acknowledged the discrepancy between the joint petition and the order respecting future medical bills, pointing out, however, that under the law, a joint petition settlement must be final in all respects, which the claimant and his attorney knew, or should have known. The Commission also noted that inasmuch as the order excluded future medical bills, the Commission concluded that claimant and his attorney had

agreed to the terms of the order. The Commission found that a copy of the joint petition order had been immediately furnished to claimant and his attorney and concluded that proper procedures of the Commission had been followed in the joint petition settlement and that jurisdiction over the case had been lost. We fully agree with the findings and conclusions of the Commission, as did the Circuit Court.

The Arkansas Workers' Compensation Act provides for joint petitions in Section 19 (1), Ark. Stat. Ann. § 81-1319 (1947):

> Section 19 (1), Joint Petition: Upon petition filed by the employer or carrier and the injured employee, requesting that a final settlement be had between the parties, the Commission shall hear the petition and take such testimony and make such investigations as may be necessary to determine whether a final settlement should be had. If the Commission decides it is for the best interests of the claimant that a final award be made, it may order such an award that shall be final as to the rights of all parties to said petition, and *thereafter the Commission shall not have jurisdiction over any claim for the same injury or any results arising from same.* If the Commission shall deny the petition, such denial shall be without prejudice to either party. No appeal shall lie from an order or award allowing or denying a joint petition. (Emphasis supplied.)

The Arkansas Supreme Court has not addressed directly whether a joint petition order may be vacated if fraud is present, and inasmuch as the claimant has not argued that point on appeal, we regard the issue as abandoned. *W. Shanhouse & Sons* v. *Sims*, 224 Ark. 86, 272 S.W. 2d 268 (1954).

When fraud is removed as a consideration in this appeal, the only elements remaining are claimant's contention that he would not have entered into the settlement had he known that future medical expenses would not have been paid and the unexplained anomaly between the joint petition and the joint petition order.

The first element may be readily disposed of. Whatever the claimant may have understood at the onset regarding future medical expenses even up to the point he (alone) signed the joint petition, it is thoroughly appropriate to conclude that he learned no later than the hearing on November 4 that if he wanted the $11,390.00 and other benefits, he could not, under the law, enter into a settlement that left future medical expenses open. We think the Commission's finding that the claimant understood this and agreed to it is fully justified and reasonably inferable from the record when considered in its entirety. The Commission noted that copies of the order were immediately furnished to claimant and his attorney and any doubts which claimant may have harbored concerning the finality of the settlement are amply cured in the face of an inordinate delay of well over nine years, notwithstanding his awareness that payment of medical bills had been refused by his employer.

Unfortunately, the discrepancies between the joint petition and the joint petition ordered respecting future medical payments is not so easily resolved. However, a number of observations are relevant and in the final analysis the same reasoning as above undermines the claimant's argument on this point as well as the former. The confusion as to the several numbers ascribed to this claim, but more importantly the absence of other signatures and verification, nourish a sizeable doubt that the joint petition in the record was in actuality the one presented to the Referee. We consider it most unlikely that the Referee would have accepted, and acted upon, an undated, unsigned and unverified "joint petition," which would fail to meet the requirements of Section 19 as well as the rules of the Commission in such matters. Whether a proper joint petition was submitted to the Referee or, whether the matter was simply dealt with by sworn testimony at the hearing itself must remain a matter of conjecture, as the lapse of time has destroyed the possibility of a solution. It is significant that the loss occasioned by the lapse of time rests with the claimant. It is enough, we feel, that the Commission found that the proper procedures had been followed in 1966 and that the claimant knew the settlement to be final in all respects. The Commission is in a better position than we to determine whether its normal operating procedures are

followed and we are left to consider only that evidence which is most favorable to the Commission's findings and to view, weigh and interpret it in the light most favorable to those findings. *Barksdale Lumber Company* v. *McAnally*, 262 Ark. 379, 557 S.W. 2d 868 (1977). Indeed, we are required to give the strongest probative force possible in favor of the Commission's action. *Holland* v. *Malvern Sand and Gravel Company*, 237 Ark. 635, 374 S.W. 2d 822 (1964).

The claimant relies heavily on *Hartz Seed Company* v. *Thomas*, 253 Ark. 176, 485 S.W. 2d 200 (1972), holding that the Commission did not lose jurisdiction where it failed to conduct a hearing on the joint petition order actually entered. In *Hartz*, an Administrative Law Judge took a joint petition under advisement, presumably to weigh the best interests of the claimant against the proposed settlement. While the matter was in this posture, a second joint petition was filed increasing the award to the claimant by the sum of $1,705.00. The opinion states that "An amendment having the effect of increasing the indicated payment was then made with the approval of the carrier, but without notice to the claimant." The facts of the case reflect that no hearing was conducted other than the one previously referred to and the Supreme Court properly affirmed an order of the Circuit Court holding that the Commission did not lose jurisdiction where no hearing was held on the joint petition settlement as finally concluded. Thus, *Hartz* stands for the rule that the requirement of a hearing is mandatory in order for jurisdiction to be lost. It is notable that in the case before us it is undisputed that a hearing was conducted and that the claimant was present and testified. Additionally, it is notable that in *Hartz* the claimant acted in a *timely* manner to challenge the failure to conduct a hearing.

It does not follow from the decision in the *Hartz* case that a claimant may enter into a joint petition settlement, have the use and benefit of over $16,000.00 over many years and then set aside such a settlement upon the dubious allegation that he didn't understand it to be final. We think *Cook* v. *Brown*, 246 Ark. 11, 436 S.W. 2d 482 (1969), more nearly governs the case before us. In *Cook*, the claimant was injured in August of 1965. In September, 1966, claimant, his employer and the

carrier petitioned for approval of a lump sum settlement of $2,329.95 based on a 15% permanent, partial disability, which was approved by joint petition order. Less than a year later, the claimant sought to reopen the claim, contending that his disability had increased to 30% and that he was incapable of understanding the joint petition and thought his claim would remain open. The Supreme Court affirmed an order of the Commission that it was without jurisdiction to reopen the case:

> No statute similar to §81-1319 (1) from any jurisdiction has been called to our attention. We do find an Illinois statute which is comparable. Smith-Hurd Ann. St. Ch. 47-48, §156, par. (h), precludes review by the commission of any lump sum award or settlement contract approved by it. That statute has been held to estop review by the commission of such a settlement even for alleged fraud. *Michelson* v. *Industrial Commission*, 31 N.E. 2d 940 (1941). A somewhat similar statute in Oklahoma has been likewise interpreted. *Gibbins* v. *Indian Electric Cooperative*, 219 P. 2d 634 (1950); *Indian Territory Illuminating Oil Co.* v. *Ray*, 5 P. 2d 383 (1931). In both jurisdictions the claimants were referred to the courts for relief. We cite those cases only to show that other jurisdictions are extremely cautious about giving to their commissions the power to review their own joint and final awards. Their reasoning is to the effect that the statutes are so clear that to hold otherwise would be to legislate by judicial pronouncement.

> Our statute is unambiguous. It is fortified by the wording of Ark. Stat. Ann. §81-1326 (Repl. 1960). That section provides for the modification of awards generally; however, it specifically excepts from its provisions those awards made under §81-1319 (1).

> We hold that neither the statute nor any inherent powers of the commission, considering the state of claimant's pleadings, would justify its reopening of the joint settlement.

> Conceding entirely that one avowed and worthwhile ob-

jective of Section 19 (1) is to protect the claimant in joint petition settlements, it should be noted that there is another objective of Section 19, also to be valued, and that is the achieving of finality where the parties have reached a fair compromise — hence, the proviso that the Commission will have no further jurisdiction. In the case before us, the claimant was well and ably represented and, by all indications, well served by the compromise itself. To hold that the Commission could recover jurisdiction nearly ten years after a settlement not even alleged to be unfair, on so slender a ground as here advanced, would, we believe, be a patent injustice.

Affirmed.